(No. 33232.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* GEORGE SHAMBLEY, Plaintiff in Error.

*Opinion filed October 25, 1954.*

THADDEUS B. ROWE, and WILLIE E. WASHINGTON, both of Chicago, for plaintiff in error.

LATHAM CASTLE, Attorney General, of Springfield, and JOHN GUTKNECHT, State's Attorney, of Chicago, (FRED G. LEACH, GEORGE W. SCHWANER, JR., JOHN T. GALLAGHER, RUDOLPH L. JANEGA, and ARTHUR F. MANNING, of counsel,) for the People.

Mr. JUSTICE DAILY delivered the opinion of the court:

Defendant, George Shambley, was tried by a jury in the municipal court of Chicago on an information charging him with assaulting his wife with a deadly weapon. He was found guilty and assessed a fine of $200, which he paid. Defendant now sues out this writ of error to review the conviction and, although only a misdemeanor is involved, the presence of a fairly debatable constitutional question, which was raised and passed on in the trial court and properly preserved for review, gives us jurisdiction of the cause.

Before looking to the constitutional issue raised, our attention is first attracted to a contention of the People that the questions presented by the writ were rendered moot when defendant paid the fine assessed against him. Stated differently, the contention raises the question of whether a defendant in a criminal cause, after paying a fine properly assessed, may sue out a writ of error and obtain a review of the proceedings. We do not find that this court has ever passed upon the question and it appears that conflicting results have been reached at Appellate Court level in *Lambert* v. *People,* 43 Ill. App. *223*; *People* v. *Donahoe,* 223 Ill. App. *277*; *People* v. *Bandy,* 239 Ill. App. *273*; and *People* v. *Lee,* 334 Ill. App. *158*. The

latter case held that payment of a fine did not constitute a waiver of the right while the other cases cited appear to hold that, under the circumstances presented in each, such a waiver was effected.

Examination of authorities, many of which are cited in the recent case of *Village of Avon* v. *Popa*, 96 Ohio App. 147, 121 N.E. 2d 254, also discloses conflicting results in other jurisdictions, with the majority view being that the right to review is waived where a fine is voluntarily paid. It is our conclusion, however, that the contrary view is the more just and reasonable, such a conclusion being supported in principle by the statement of Mr. Justice Holmes in *Commonwealth* v. *Fleckner*, 167 Mass. 13, 44 N.E. 1053, wherein he said: "We should be slow to suppose that the legislature meant to take away the right to undo the disgrace and legal discredit of a conviction, * * * merely because a wrongly convicted person has paid his fine or served his term."

Such a conclusion is also consistent with the view this court has expressed in civil actions in such cases as *Lott* v. *Davis*, 262 Ill. 148, and *Page* v. *People ex rel. Weber*, 99 Ill. 418, both of which hold that payment of a judgment before or after execution does not operate as a release of errors. In each case it was reasoned that it was immaterial whether or not the defendant could recover the money paid since the erroneous judgment was of itself an injury from which the law will presume damage. We agree with the court in *People* v. *Lee*, 334 Ill. App. 158, that the latter observation is even more pertinent in the case of an erroneous conviction for a criminal offense for, as stated in the *Popa case:* "Certainly an erroneous judgment of a conviction of a criminal offense against a man is an injury per se, 'from which the law will intend he is or will be damnified by its continuing against him unreversed'." (Citations.) Based upon these decisions and upon a consideration of the practical aspects of the situation, we think

it only just and reasonable that the defendant be given an opportunity to clear his name of the charge he has steadfastly denied and, in view of his timely appeal, will not construe the payment of the fine as constituting a waiver of his right of review.

The facts necessary to a consideration of the errors assigned by defendant show that he and his wife became engaged in a family quarrel at their home. The wife testified, and the defendant denied it, that he drew a gun and threatened her with it. In any event, the wife left the home, called the police from a nearby store, then waited in front of the home for their arrival. When the officers came they entered the house with the wife, placed defendant under arrest, though he denied having done anything wrong, and removed him to their squad car. While one officer remained in the car with defendant, the other returned to the house and inquired of the wife if she knew the whereabouts of the gun. She indicated she did not but told the officer he could search the premises for it and, as a result of his search, the gun was found in the family garage. It also appears from the record that defendant and his wife were joint owners of the premises.

Defendant made a timely motion to suppress the gun as evidence but the motion was overruled, as was his objection when the gun was offered and received in evidence. In both instances, and in this court, it has been defendant's contention that the gun was obtained by an unlawful and unreasonable search in violation of the rights guaranteed to him by section 6 of article II of the Illinois constitution. The People, for their part, insist that the search made with the consent of the wife, a joint owner and occupant of the home, was neither unreasonable nor unlawful.

The question presented is whether the wife's invitation and consent to search the premises had the effect of waiving defendant's constitutional immunity. In *People* v. *Lind,*

370 Ill. 131, and the leading case of *Amos* v. *United States,* 255 U.S. 313, 65 L. ed. 654, it was held that a wife's consent could not waive the husband's rights. Both cases, however, involved elements of implied coercion on the wife which are not present here where the wife's consent was freely given and where, in fact, the search was made at her invitation. Neither case considers what the effect of joint ownership of the premises might have had but both suggest that a different result might have obtained had the element of implied coercion been lacking. We have found no case presenting facts identical with the present case but the rule seems to be well established that where two persons have equal rights to the use or occupation of premises, either may give consent to a search and the evidence thus disclosed can be used against either.' Thus in *Stein* v. *United States,* 166 Fed. 2d 851, (*certiorari* denied, 334 U.S. 844, 92 L. ed. 1768,) it was held that a woman who lived with one of the defendants in a house under their joint ownership and control, could lawfully enter the house after being locked out by the defendant and could, thereafter, by invitation to Federal agents to enter, make their entry and search of the premises lawful. In reaching this result the court pointed out that the free and voluntary invitation extended by the woman, who was held to have the same right to occupancy and possession as defendant, made the search a reasonable one and, on such grounds, distinguished the case from *Amos* v. *United States,* previously referred to. Again, in *State* v. *Cairo,* 60 Atl. 2d 841, where a wife permitted police to search for stolen goods in a store she owned jointly with her husband, the court held there was no violation of a constitutional right as to the husband, stating (p. 845) : "* * * the question as to whether Mrs. Cairo could give such permission as agent of her husband, so as to bind him by his action, is not involved in this case because there is evidence that in granting permission to make the search complained of she

was not acting as agent for her husband but in her own right as a joint owner and occupant of the premises." In *Morris* v. *Commonwealth,* 306 Ky. 349, 208 S.W. 2d 58, where a father gave officers permission to search the home for evidence of a murder of which his son was suspect, it was held that the consent of the head of the house, or of one in charge of the house at the time a search is made, will render competent the evidence obtained. *United States* v. *Sferas,* 210 Fed. 2d 69, (*certiorari* denied, *Skally* v. *United States,* 347 U.S. 935, 98 L. ed. (Adv.) 512,) presented a situation where one counterfeiter consented to the search of a printing plant and it was held that his consent waived the constitutional immunity of his partners in the venture, with whom he had equal rights to the use and possession of the premises.

While it appears that the issue presented is a controversial one, it is our opinion, under the facts peculiar to this case alone, that the principle of the cases referred to above is to be applied here. In this case the consent of the wife was freely and fully given; in fact, her action appears to have been tantamount to an invitation. It is clear that in giving her consent she was not acting as agent for her husband but was acting in her own right as occupant of the premises. Such being the case, it is our conclusion that the search was both reasonable and lawful and that the court did not err in refusing to suppress the gun as evidence.

As a final point, defendant contends that the verdict returned against him was a nullity, in that it found him guilty as charged by the "indictment," when he was in fact charged by "information," and in that it failed to name the victim of the assault. In *People* v. *Freitag,* 336 Ill. 286, 291, it is stated: "Verdicts will be reasonably construed and will not be set aside except from necessity originating in doubt with respect to their meaning. The test of the sufficiency of a verdict is whether the jury's

intention can be ascertained with reasonable certainty. If the intention can be so ascertained, the verdict will be sustained." While the verdict in the present case seems to have been carelessly drawn, we cannot say that it is a nullity. Despite the use of the word "indictment" the jury found defendant "guilty as charged" and it appears that everyone understood the verdict, the judge when he approved it and entered judgment, and the defendant when he discharged the fine assessed on the basis of the verdict. The verdict will, therefore, be sustained.

The judgment of the municipal court of Chicago is affirmed.

*Judgment affirmed.*