**People of the State of Illinois, Plaintiff-Appellee, v. Pablo Rodriquez, Defendant-Appellant.**

Gen. No. 50,490.

First District, Third Division.

January 5, 1967.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Marshall A. Patner, Frederick F. Cohn and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Robert D. Boyle, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE DEMPSEY delivered the opinion of the court.

Pablo Rodriquez was found guilty of burglary in a non-jury trial and was sentenced to the penitentiary for a term of four to twelve years.

He contends that his conviction should be reversed because the trial court admitted into evidence items seized during an illegal search of his room, and that his confes-

sion should not have been received in evidence because it was made after the police confronted him with the illegally seized items. Subordinate contentions are that a defense witness was asked improper questions in an attempt to impeach her, and the trial court disregarded the same witness' unimpeached testimony absolving the defendant of any connection with the stolen property.

The apartment of Estelle Andrews in Chicago was burglarized on October 3, 1963. Among the objects taken from the apartment were cuff links, a cross and a wedding ring. The ring was inscribed "Eugene to Estelle." One week later another burglary was committed and police inquiry into it began. An automobile was found which was identified as the one used in the second burglary. The car was kept under surveillance, and when the defendant and a female companion entered it, he was arrested, accused of the second burglary and taken to the police station. Immediately thereafter two police officers went to his hotel room and searched it. Cuff links, a cross and a ring inscribed "Eugene to Estelle" were seized. The officers returned to the station and confronted the defendant with the articles found in his room. He first denied, then confessed taking the articles from the Andrews' apartment.

At the beginning of the trial the defendant presented a motion to suppress evidence allegedly seized illegally. The only witness called to testify by the defendant was a police officer who said on direct examination that the search was made without a warrant. On cross-examination he testified that the defendant denied knowing anything about the second burglary, claiming he was with his wife on the day of the burglary and she could support his alibi. He gave the police the address of his hotel and his room number. Accompanied by Sonya Rosa, the girl who was with the defendant when he was arrested, the police proceeded to his room. Sonya knocked on the door, identified herself and said that the police were with

her. The door was opened and the police identified themselves and entered; they told the woman who opened the door that her husband had been arrested. She replied that she was living with the defendant but was not married to him and that her name was Antonia La Boy. They noticed a wedding band on her finger and asked if she received it from the defendant. She answered that a friend of the defendant named Santiago gave it to her and she allowed the police to examine it. They saw the inscription "Eugene to Estelle" and realized that the ring was the one taken from the Andrews' apartment. They asked Antonia if they could look through the room and she consented. The cuff links were found on top of a dresser and the cross was found in a table drawer. The officer also testified that he saw women's clothing in the room. The motion to suppress was denied.

The defendant had the burden of proving that the search and seizure were unlawful. Ill Rev Stats, 1963, c 38, § 114–12(b). However, the evidence presented by him on his motion to suppress confirmed the right of Antonia La Boy to permit the police to search the room. He referred to the woman in his room as his wife; he directed the police to go to his room and speak to her; the woman who answered the door said she lived there and feminine clothing was in the room. Although she said she was not married to the defendant she was wearing a wedding ring and the defendant had said they were married. These facts, instead of proving the illegality of the search, as was the defendant's burden, were sufficient to establish the woman's right to the use and occupation of the room and her authority to consent to the search. Under these circumstances, the search was not unreasonable and the trial court did not err in denying the motion to suppress.

During the trial in chief more evidence pertaining to the validity of the search was brought out—much of it by the State through cross-examination of Antonia La

Boy, who turned out to be an eighteen-year-old girl. Her direct examination as a defense witness was mainly about her acquisition of the wedding ring from the defendant's friend, Santiago. On cross-examination the State, over objection, was allowed to ask a wide range of questions about her background, morals and her relationship with the defendant. It was disclosed that by "living with the defendant" she meant sleeping with him at night, that she and a child she had borne by another man lived with her mother, that her clothes were kept at her mother's home not the hotel and that, although she worked, she did not pay any portion of the rent for the hotel room.

The defendant testified in his own behalf and denied participating in the Andrews' burglary. He said he had seen the ring on Antonia La Boy's finger but that he had never seen the cuff links or cross. Under the cross-examination of the State the relationship between him and Antonia La Boy was again explored. He testified that he paid the hotel rent, denied that he supported her, said she was only his girl friend and that he took her out now and then, and admitted that she stayed with him every night for two months.

██ ██ After the foregoing evidence the defendant rested his case; he did not renew his motion to suppress. However, his failure to do so does not foreclose a court of review from considering all the evidence presented during the trial. The general rule is that the failure of a defendant to make an appropriate motion in the trial court, thus not preserving the question for review, is deemed to be a waiver of the question. But in People v. Burson, 11 Ill2d 360, 143 NE2d 239 (1957), the Supreme Court stated that "[T]his is a rule of administration and not of jurisdiction or power, and it will not operate to deprive an accused of his constitutional rights of due process." In People v. Weinstein, 35 Ill2d 467, 220 NE2d 432 (1966), the court said: "This court . . . will consider

errors not properly preserved in a criminal case . . . where their nature is such as to deprive an accused of his constitutional rights." The desirability of full and adequate review in criminal proceedings (evinced by the practice of the Supreme Court in cases such as Burson) was recognized by the legislature in the Code of Criminal Procedure: a defect affecting a substantial right may be noticed by a court of review although it was not brought to the attention of the trial court. Ill Rev Stats, c 38, § 121–9(a) (1963) ; SHA, § 121–9, Committee Comments. In the instant case the legislative and judicial interpretations of the exception to the waiver rule converge, for the substantial right which the defendant claims was violated is one protected by both the Federal and State Constitutions. Accordingly, we will weigh all the evidence relevant to a determination of the validity of the search.

█ █ Since the search was made with Antonia La Boy's consent and without the defendant's, its validity depends upon whether she had authority to consent to it. In evaluating her consent we are concerned with the articles found in the room not the article found on her. The ring can be divorced from the cuff links and cross. When she said she was unmarried, although she was wearing a wedding ring, the police, knowing that a wedding ring had been stolen, were understandably suspicious and it was reasonable for them to inspect it. Upon request she turned it over to them. The ring had been given to her, it was in her possession and belonged to her at the time, and it was her personal privilege to retain or to yield it. Moreover, it was in plain view and its seizure involved no search. People v. O'Connell, 30 Ill2d 603, 198 NE2d 834 (1964) ; People v. McCracken, 30 Ill2d 425, 197 NE2d 35 (1964). If only the ring had been received in evidence and if only the ring had induced the confession we would not have the present problem. But the cuff links and the cross were also admitted in evidence and at the

32

end of the trial the court indicated that the possession of these items in the room of the defendant was a factor in his finding of guilty. And the defendant was confronted with these two items before he confessed. The fruits of an illegal search are tainted with illegality (People v. Bankhead, 27 Ill2d 18, 187 NE2d 705 (1963)), and if the confession was brought about in part by the result of an unreasonable search the confession should not have been used against the defendant.

■ A person other than a defendant may have authority to consent to a search of premises occupied jointly with a defendant and a search pursuant to that consent is not an unreasonable search constitutionally prohibited. People v. Perroni, 14 Ill2d 581, 153 NE2d 578 (1958). A wife has authority to consent to a search of premises owned and occupied jointly by her and the defendant-husband. People v. Palmer, 31 Ill2d 58, 198 NE2d 839 (1964) ; People v. Shambley, 6 Ill2d 38, 122 NE2d 172 (1954). Persons other than wives have been held to have that authority in People v. Walker, 34 Ill2d 23, 213 NE2d 552 (1966) ; People v. Palmer, 26 Ill2d 464, 187 NE2d 236 (1963) ; Teasley v. U. S., 292 F2d 460 (9th Cir 1961) and Nelson v. People of the State of California, 346 F2d 73 (9th Cir 1965). An examination of these cases will be helpful in determining whether Antonia La Boy had that authority.

In the Walker case the defendant was arrested in connection with a rape and taken to the police station. Later the police went to his home, a house he shared with his mother and sister, and asked about a gun he had used. After some hesitancy the sister pointed out the location of the gun. The weapon was seized and subsequently introduced as evidence. The court stated that both the mother and sister lived in the house and that upon the record before the court they must be held to have had equal rights to the use and possession of the premises.

The denial of the motion to suppress was held proper because the sister had authority to consent to the seizure.

In the Palmer case the defendant and Nathaniel Yancey committed a burglary and hid most of the loot in the living room of the defendant's apartment. Yancey, arrested with his share, took the police to the apartment. No one responded to their knock, but later one Twillie, a tenant of the defendant who shared the apartment with him, let the police into the apartment. The stolen property was discovered in the living room. The court stated that the living room was a room of common usage and held that the motion to suppress was properly denied, for when either of two people with equal rights to the use or occupation of premises consents to a search the evidence thus disclosed can be used against either.

In Teasley v. U. S. the defendant and one Skinner were convicted of narcotics offenses. Skinner, who had a key to the defendant's apartment, was arrested. The police accompanied him to the apartment, he opened the door, and the defendant was seen attempting to stuff something down into a couch. The police retrieved the narcotics and arrested the defendant. During the trial the defendant contended that the entry into the apartment was illegal. His testimony indicated that Skinner was his friend and spent much time in his apartment taking care of him while he was sick. Other testimony indicated that Skinner was living with him prior to the defendant's arrest. There was no testimony that Skinner obtained the key unlawfully or that the police forced him to admit them to the apartment. The court held that the police gained entrance by the consent of one lawfully entitled to enter the apartment and to consent to the entry of others, and that their entry was not a violation of the Fourth Amendment.

In Nelson v. People of the State of California police knocked at the door of the defendant's apartment and in-

formed Virginia Thomas, who answered the door, who they were and that they wanted to talk with her. She told them to come in and consented when they asked if they could search the premises. Thomas testified that the defendant had rented the apartment about two months before the arrest, that she had moved in with him at that time and had lived with him till the date of the arrest, and that they were living "sort of as husband and wife." The defendant testified that at the time of the arrest he was living with his brother at another address, having left the apartment in question two weeks prior to the arrest, but he had not taken all his clothing with him. He testified that Thomas had shared his apartment for several months before he left and that she had keys to it. The court held that if the defendant still lived at the apartment when the search was made, he and Thomas were joint occupants, that if he did not live there Thomas was the sole occupant, and that either way the trier of fact could decide that she had authority to permit the police to enter and search.

■ These cases demonstrate that a person has authority to consent to a search of premises occupied jointly with the defendant if the person has an equal right to the use and possession of the premises. The existence of an equal right may be inferred when the person consenting to the search has a familial relationship with the defendant, such as wife or sister, for an equal right to use and possession of the premises is a normal incident of that relationship. In the absence of a familial relationship the existence of an equal right to use and possession may be inferred when the person consenting has a property right or other connections with the premises, or with the defendant, which commonly signify that he is entitled to bring guests into the premises.

Since Antonia La Boy was neither related to the defendant nor a lessee of the hotel room, her authority to

consent to the search would depend on her connection with the room and her association with the defendant. While she was the defendant's paramour the unrebutted evidence was that she was not a full-time resident in the defendant's home. The fact that she spent her nights there and had done so for the two months preceding his arrest, while giving some support to the inference that she had rights in the apartment, is not in itself proof of her authority to consent to the search, for that fact likewise supports the inference that her rights were only those of a guest. Also supporting the latter inference is the fact that she did not stay in the room after the defendant's arrest. Her testimony that her clothes were kept at her mother's apartment further supports the inference that her stays with the defendant were temporary. Although the officer testified that he saw women's clothing in the room, he did not say that the clothing was Antonia's, nor was it shown to be more than a person staying overnight, or for a short time, would have brought. Furthermore, the officer's full testimony revealed that the clothing referred to by him was not in open view but was found in a dresser drawer after he commenced his search. There was no evidence of conduct on the part of the defendant or the girl suggesting that they had equal rights in the room or joint control over it; there was no proof that she had a key to the room or that she either brought her friends into it or had the authority to invite them; there was no proof that she shared his board as well as his bed or that she resided with him in the room.

█ There were no conflicting facts to be resolved by the trial court and the credibility of witnesses was not in dispute. The testimony of the officer and that of the girl was not contradictory. Her testimony just threw additional light on the question of her authority to consent and her testimony was neither contrived nor volunteered; it was elicited by the prosecution. There was only one

particular wherein their testimony differed and this concerned the identification of the officers before they entered the room. The testifying officer stated that Sonya Rosa knocked on the door and told Antonia that policemen were with her. Antonia testified that Sonya said, "Open the door, it is me, Sonya, and two other friends of mine. . . ." These differing versions of what was said are not material to the issue under consideration; the issue does not turn on whether the girl was deceived in permitting the officers to enter, on whether her consent to the search was intelligently made, nor on whether implied coercion influenced her consent. The issue is her right to consent, and under the total evidence of this case we must find that she did not have this right and that the ensuing search and seizure were unconstitutional.

▆▆▆ The illegally obtained evidence and the defendant's confession should have been suppressed and the conviction based upon them must be reversed. Fahy v. Connecticut, 375 US 85 (1963); People v. McDonald, 51 Ill App2d 316, 200 NE2d 369 (1964).

Our decision on this point makes unnecessary a discussion of the defendant's subordinate assignments of error.

Reversed.

SULLIVAN, P. J. and SCHWARTZ, J., concur.