**People of the State of Illinois, Plaintiff-Appellant, v. Irwinna Weinstein, Defendant-Appellee.**

**Gen. No. 52,656.**

First District, Second Division.

December 30, 1968.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Daniel Weil, Assistant State's Attorneys, of counsel), for appellant.

Frank G. Whalen, of Chicago, for appellee.

MR. JUSTICE McNAMARA delivered the opinion of the court.

The defendant, Irwinna Weinstein, was indicted for the murder of her husband, Harvey Weinstein. The defendant made a motion to suppress certain physical evidence on the ground that this evidence was obtained as a result of illegal search and seizure. The court granted defendant's motion to suppress this evidence, and the State appeals from that order. The State contends that the searches and seizures were valid, and that the court erred in allowing the motion to suppress. The State is also appealing an order which suppressed certain statements made by defendant to the police. For our opinion concerning that appeal, see People v. Weinstein, — Ill App2d —, — NE2d —, 1968.

Defendant was previously convicted for the murder of her husband. This court affirmed the conviction, People v. Weinstein, 66 Ill App2d 78, 213 NE2d 115 (1965), but the Supreme Court reversed the judgment of conviction and remanded the cause for a new trial. People v. Weinstein, 35 Ill2d 467, 220 NE2d 432 (1966). After the State's motion to reinstate the cause was granted, the following facts were elicited at the hearing on defendant's motion to suppress certain physical evidence. Lieutenant John Cartan of the Chicago Police Department took Irwinna Weinstein into custody on September 30, 1963. She was questioned and released later that evening. She was arrested on October 4 and remained in custody until re-

leased on bond October 8. On October 5, while defendant was in custody, Commander Francis Flanagan, Lieutenant Cartan and another police officer went to the Weinstein premises located at 9716 South Van Vlissingen Street, Chicago. Defendant and the deceased owned these premises in joint tenancy and resided there with two minor children. At the home, the officers were admitted to the premises by Meyer Weinstein, father of the victim and father-in-law of the defendant. On that visit the officers removed a bottle of bleach and a dog's brush.

On October 7, letters of administration were issued by the Probate Court of Cook County appointing Meyer Weinstein administrator of the estate of Harvey Weinstein. On the same date an order was entered by the Probate judge which barred the defendant and her family and representatives from entering the Weinstein home without the approval of the administrator, and which also ordered defendant and her family to turn over the keys to the home to the administrator.

On the same day, October 7, Meyer Weinstein again met Lieutenant Cartan at the premises, showed him the orders of the Probate Court and said that he would leave the key with a neighbor so that the police could enter the home whenever they wished. On October 7, Lieutenant Cartan removed two children's books, two dolls, a man's shirt and a towel. On three subsequent visits, he removed a bottle of gin, a sponge, a scrub brush, a polish applier, a broom, a rubber pad, a pink throw rug (taken from a storage room attached to the house), a section of the living room carpet and finally a certain musical instrument. The police did not have defendant's permission to enter the home at any time, nor did they ever obtain a search warrant.

Meyer Weinstein testified that he always had a key to the home prior to his son's death. He further testified that defendant or her parents changed the locks to the home on September 30, but that after he was appointed

3

administrator, he again changed the locks. He testified that he did not give notice to the defendant of the probate proceedings because he did not know where she was. He also stated that he obtained the order from the Probate Court because personal property was being taken from the home. He believed that the court order gave him the authority to authorize a search of the premises.

Defendant testified that she saw Meyer Weinstein on October 4 when he served her with a document pertaining to her two children. She was taken into custody on that day and released on bond on October 8, but could not enter her home because the locks were changed.

The State contends that Meyer Weinstein had the authority to lawfully consent to a search of the premises: first, because of his familial relationship and possession of a house key prior to his son's death; and secondly, because by order of the Probate Court he was administrator of the estate of Harvey Weinstein and was given supervisory control of the Weinstein home.

At the trial court, before any evidence was heard on the motion to suppress the evidence, the State announced that it would not introduce into evidence at trial articles taken from defendant's home on October 5. The following colloquy then occurred:

> THE COURT: "The State is in effect conceding anything on the 5th should not be received in evidence and the petitioner's position is well taken as to that evidence."

> STATE'S ATTORNEY: "Yes."

Despite that statement to the trial court, the State now argues that the search made by the police on October 5 and the subsequent searches were lawful because Meyer Weinstein by virtue of his familial relationship and possession of the house key had the authority to consent to the search.

4

The Illinois courts in the past several years have ruled on the issue of who, other than a defendant, may lawfully consent to a search and seizure. In People v. Shambley, 4 Ill2d 38, 122 NE2d 172 (1954), the defendant was convicted of assaulting his wife with a gun. The defendant lived with his wife, who consented to a search by the police and seizure of the gun by which she was assaulted. The court held at page 42 that ". . . Where two persons have equal rights to the use or occupation of premises, either may give consent to a search and the evidence thus disclosed can be used against either." In that case, the wife ". . . was not acting as agent for her husband but was acting in her own right as occupant of the premises." At page 43. See People v. Perroni, 14 Ill 2d 581, 153 NE2d 578 (1958) ; People v. Speice, 23 Ill 2d 40, 177 NE2d 233 (1961). In People v. Palmer, 26 Ill 2d 464, 187 NE2d 236 (1962), the court held that the consent of the defendant's tenant will validate a search of the common rooms of defendant's house. In People v. Walker, 34 Ill2d 23, 213 NE2d 552 (1966), defendant lived with his mother and sister. The police searched his home after getting the sister's consent, and the court upheld the search since the sister had equal rights to the use and possession of the premises.

In People v. Voleta, 57 Ill App2d 279, 206 NE2d 737 (1965), defendant frequently stayed at his brother's apartment. The brother consented to a search of his apartment, and the court upheld the validity of that consent. However, in People v. Rodriquez, 79 Ill App2d 26, 223 NE2d 414 (1967), the court held that the consent of an 18-year-old girl friend who stayed in defendant's room was insufficient, since the girl's child and clothes were at her mother's home, and she did not pay any portion of defendant's rent.

From the above cases, the rule is well established in Illinois, that where two persons have equal rights to the use or occupation of the premises, either may consent

5

to a search and the evidence so disclosed may be used against either. It is clear in the instant case that Meyer Weinstein did not have equal rights to the use or occupation of the premises. He did not reside there, and possession of the house key gave him no right of occupancy.

The State next contends that Meyer Weinstein's appointment as administrator of the estate along with the order barring defendant and her representatives from the home authorized him to consent to the search of the premises.

The Illinois Probate Act provides in part as follows:

> "The executor or administrator shall not take possession of real estate or the portion thereof occupied by the heir or devisee thereof as his residence unless otherwise provided by the decedent's will or unless the court at any time finds that possession is necessary for the payment of claims, expenses of administration, estate or inheritance taxes or legacies, the preservation of the real estate, or any part thereof, or the proper distribution of the estate." (Ill Rev Stats 1965, c 3, § 219a(2).)

 Letters of administration authorized the administrator to sue for and collect the personal estate and debts to the decedent. Our courts have consistently held that the administrator of an estate takes no title or interest in the real estate of the decedent, except a naked power to sell the same if the personal assets are insufficient to pay the debts of the estate. Noe v. Moutray, 170 Ill 169, 48 NE 709 (1897); In re Estate of English, 24 Ill 2d 357, 181 NE2d 111 (1962). Such a naked power did not give the administrator in the instant case the authority to legally consent to a search of the premises. Nor did the order of the Probate Court without notice obtained for the purpose of halting any dissipation of the personal estate confer any authority on the administrator to con-

sent to a waiver of a constitutional right to what otherwise would be an unreasonable search.

The State cites Bradley v. Fox, 7 Ill2d 106, 129 NE2d 699 (1955), in support of its proposition that the administrator had the authority to permit a search. But in the Bradley case, a civil proceeding, the court held that a person who is convicted of the murder of another shall not inherit from the murdered person or acquire as surviving spouse any interest in the estate of the decedent by virtue of his death. See also Ill Rev Stats 1965, c 3 § 15a. The Bradley case, however, deals with ownership of property rather than the authority to consent to a search, and only applies to one who is convicted of murder. Further, under the holding in Bradley, a joint tenant convicted of murdering the other joint tenant would retain title to an undivided one-half interest in the property as a tenant in common.

In Jones v. United States, 362 US 257 (1960), the United States Supreme Court stated at page 266:

> "It is unnecessary and ill-advised to import into the law surrounding the constitutional right to be free from unreasonable searches and seizures subtle distinctions developed and refined by the common law in evolving the body of private property, law which, more than almost any other branch of law, has been shaped by distinctions whose validity is largely historical."

██ We find that the trial judge ruled properly in allowing the motion to suppress certain physical evidence. Accordingly, the order of the Circuit Court of Cook County is affirmed.

Order affirmed.

BURKE, P. J. and LYONS, J., concur.