The People of the State of Illinois, Plaintiff-Appellant, *v.* Prentice Taylor, Defendant-Appellee.

(No. 12325;

Fourth District—August 14, 1975.

TRAPP, J., dissenting in part.

James R. Burgess, Jr., State's Attorney, of Urbana (Robert James Steigmann, Assistant State's Attorney, and James Carlton Dedman, Law Student, of counsel), for the People.

William R. Gaston, of Gaston & Goldstein, of Urbana, for appellee.

Mr. JUSTICE CRAVEN delivered the opinion of the court:

The State appeals a trial court decision to suppress certain evidence seized without a warrant in connection with the investigation of a rape and robbery.

The evidence suppressed was seized on two separate occasions. On February 14, 1973, four Urbana, Illinois, police officers went to the residence of Murrie Lou Taylor, mother of the suspect and defendant Prentice Taylor. One of the officers requested and was denied permission to search the home. Mrs. Taylor told them she would not allow the search without a warrant or at least until she had an opportunity to speak with one of her sons.

The officers then enlisted the aid of William Blackmon, an off-duty policeman and neighbor to Mrs. Taylor. As Blackmon approached the house, Mrs. Taylor's second son, Mathis, arrived. Mathis did not live with his mother and had never lived in the house where the search took place. He did, however, have some personal belongings stored there, some of them in Prentice's bedroom.

Mathis, without speaking with his mother, consented to the search and led Blackmon into the home. Mrs. Taylor, who was standing by the front door while Mathis and Blackmon conversed, stood silent as the officer entered the house. Once in the house, Blackmon entered Prentice's bedroom and discovered some stereo equipment associated with the crime under investigation.

In response to a pretrial motion, admission of that equipment in evidence was suppressed by the trial court, on the grounds that Mrs. Taylor did not give a voluntary, effective, and knowledgeable consent to the search, and that Mathis had no authority to consent to a search.

The following day, police officers returned, again without warrant, to pick up some stereo tapes from Prentice's room. The only testimony regarding this seizure tends to show it was made with Prentice's permission, apparently given while he was in custody of the Urbana police. As the State concedes in its brief, the record is totally devoid of any testimony regarding the circumstances leading up to the seizure of the tapes on February 15, other than Mrs. Taylor's testimony that she let the officers into the house that day because Prentice told her to give the tapes to them. The trial court held that seizure of the tapes was tainted

by the happenings of February 14, and suppressed them along with the other equipment.

On appeal, the State contends that Mrs. Taylor's silence in the face of the search on February 14 was tantamount to consent and that, in any event, Mathis Taylor had the authority to consent to a search of the house. The State also argues that the seizure on February 15 was not a fruit of the February 14 search, so that the admissibility of the tapes picked up the second day should not have hinged on the legality of the earlier search.

■■ Whether consent to a warrantless search has been given is a factual matter to be determined in the first instance by the trial court, and where the evidence on the issue is in conflict, the trial court's findings will prevail unless clearly unreasonable. (*People v. Haskell*, 41 Ill.2d 25, 241 N.E.2d 430; *People v. Peterson*, 17 Ill.2d 513, 162 N.E.2d 380.) Moreover, the State bears the burden of proving that consent to a warrantless search was voluntarily given. *Schneckloth v. Bustamonte*, 412 U.S. 218, 36 L.Ed.2d 854, 93 S.Ct. 2041; *People v. Miller*, 19 Ill.App.3d 161, 310 N.E.2d 808.

The State here argues that it was unreasonable as a matter of law to hold that Mrs. Taylor's silence did not constitute consent, since the evidence was that she was within hearing distance when Mathis consented to the search and either stood passively by or held the door for the officer as he entered. In support of this claim, the State cites two Illinois Supreme Court cases, *People v. Burbank*, 53 Ill.2d 261, 291 N.E.2d 161, and *People v. Brooks*, 51 Ill.2d 156, 281 N.E.2d 326. Both cases involve suppression of oral statements made by defendants who had previously been advised of their right to remain silent and consult with counsel. In neither case did the defendant express a wish to remain silent or consult an attorney, and in both cases the court found that the lack of an express waiver was legally insignificant under the circumstances.

■■ By contrast, in the instant case, Mrs. Taylor made an express assertion of her right to bar the search until a warrant was obtained, or at least to withhold consent until she spoke with one of her sons. The trial court found that no search warrant was produced and that Mrs. Taylor never spoke with either of her sons prior to the search. This finding is not contested by the State. Under the circumstances, we cannot say the trial court was unreasonable in holding that the State failed in its burden in establishing that Mrs. Taylor gave a voluntary, effective, and knowledgeable consent to the search.

The trial court also found that while Mathis Taylor did have some possessions stored at his mother's home, he did not have enough interest in the property to consent to a search. The State was unable to cite cases

where a nonresident's consent to a search of a room or residence had been upheld, but depends instead upon a liberal interpretation of the Supreme Court's holding in *United States v. Matlock*, 415 U.S. 164, 39 L.Ed.2d 242, 94 S.Ct. 988, that "the consent of one who possesses common authority over premises or effects is valid as against the absent, nonconsenting person with whom that authority is shared." 415 U.S. 164, 170, 39 L.Ed.2d 242, 249, 94 S.Ct. 988, 993.

The State argues that co-occupancy is not required, citing further language from *Matlock* that permission may be obtained from one having "common authority over or other sufficient relationship to the premises or effects sought to be inspected." (415 U.S. 164, 171, 39 L.Ed.2d 242, 250, 94 S.Ct. 988, 993.) The claim is that the phrase "other sufficient relationship" covers indicia of use and control short of co-occupancy.

Whatever that phrase may mean in regard to automobiles, footlockers, and other searchable effects, the cases place heavy reliance on co-occupancy where residences or effects within a residence are involved. *People v. Stacey*, 58 Ill.2d 83, 317 N.E.2d 24, applying the *Matlock* language in Illinois, approved a search based on the consent of defendant's co-occupant lover after she had informed officers that she and defendant shared the room in question. In *Haskell*, the court ultimately held that no consent was actually given, but nevertheless stated that where the record established "joint occupancy" and "equal rights to possession", a wife's consent to a search of the marital apartment would be binding against the husband. (41 Ill.2d 25, 29, 241 N.E.2d 430, 432.) A similar situation had confronted the court in *People v. Shambley*, 4 Ill.2d 38, 122 N.E.2d 172, where it was said that "where two persons have equal rights to the use or occupation of the premises, either may give consent to a search and the evidence thus disclosed can be used against either." (4 Ill.2d 38, 42, 122 N.E.2d 172, 174.) In *People v. Rodriquez*, 79 Ill.App.2d 26, 223 N.E.2d 414, consent by a girlfriend who frequently stayed overnight in defendant's hotel room was held ineffective as against him where the State failed to prove "equal rights in the room or joint control over it" or that "she shared his board as well as his bed or that she resided with him in the room." 79 Ill.App.2d 26, 36, 223 N.E.2d 414, 419.

This court has held that one with a right to enter for a limited purpose—such as a maid, janitor, repairman or the like—does not possess the equal right to use or occupancy required for consent to a search. (*Miller*.) Here, Mathis Taylor's uncontradicted testimony, cited by the State in its own brief, was that while he was welcome there and could have entered at any time to remove his belongings, he couldn't carry

out the activity he carried on in his own home at his mother's home. Thus, his use of the premises was established by the evidence to be limited and not co-equal with that of Prentice Taylor. (See in this connection *People v. Weinstein*, 105 Ill.App.2d 1, 245 N.E.2d 788, where the court held that a nonoccupant who possessed a key did not have equal rights to the use or occupation of the premises and could not validly consent to a search thereof.)

■■ What is more, this court has adopted the two-pronged test set out in *Matlock* that the government must prove not only that the consentor had authority to consent, but that "it reasonably appeared to the searching officer prior to the search that facts existed which will render the consentor's consent binding on the defendant." (*Miller*, 19 Ill.App.3d 161, 170, 310 N.E.2d 808, 815.) While officer Blackmon had learned from Mrs. Taylor that Mathis had personal belongings in the house, there is nothing in this record to show that Blackmon or any of the other officers knew, prior to the search, the extent of Mathis' access to the premises, or what his authority over them might have been. We cannot say that the trial court was unreasonable in its finding that Mathis Taylor's consent to this search was invalid as against his brother.

■■ The State's final argument is that, even granting the illegality of the first search, the seizure of tapes on February 15 was not tainted by that search. The question, according to *Wong Sun v. United States*, 371 U.S. 471, 9 L.Ed.2d 441, 83 S.Ct. 407, is:

> " 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' [Citation.]"
> (371 U.S. 471, 488, 9 L.Ed.2d 441, 455, 83 S.Ct. 407.)

Under *Mapp v. Ohio*, 367 U.S. 643, 6 L.Ed.2d 1081, 81 S.Ct. 1684, this rule is applicable to State searches and seizures. The State argues in its brief that Prentice Taylor may have been arrested and questioned independently of the February 14 search, and may at that time have directed the police to the tapes before he even knew of the earlier search. If this was so, it was within the ability and responsibility of the State to introduce evidence on the point at the hearing on suppression. Having failed to introduce evidence and thereby sustain its unquestioned burden of proving that which is now argued, the State cannot now complain of the trial court's suppression of the tapes for want of such evidence.

Judgment affirmed.

SIMKINS, P. J., concurs.

Mr. JUSTICE TRAPP, dissenting in part:

I would reverse that portion of the order which suppresses the material delivered by defendant's mother to the police on the "second day." The only evidence offered in support of the motion to suppress is the testimony of defendant's mother to the evidence that he described the location of the "tapes" to her and requested or directed her to give such to the police. The burden of proof is on defendant to show that the seizure was illegal or was tainted. *People v. Boyd*, 22 Ill.App.3d 1010, 318 N.E.2d 212; *People v. Griffin*, 18 Ill.App.3d 873, 310 N.E.2d 746; Ill. Rev. Stat. 1971, ch. 38, par. 114-12(b).

The evidence in this record does not demonstrate a "taint" as found by the trial court.