STATE, Plaintiff, vs. WARFIELD, Defendant.

*April 12—May 6, 1924.*

*Searches and seizures: In felony cases: What constitutes a "home:" Rented room: Search by landlady: Discovery of suspicious property: Report to police: Search by officers: Failure of accused to object to search: Offer in evidence of property seized: Failure to move to suppress.*

1. Property coming into possession of officers of the state through an unlawful search and seizure by such officers will not be received in evidence in a criminal case against persons whose constitutional right "to be secure in their persons, houses, papers, and effects against unlawful searches and seizures" has been violated by a state officer. p. 58.

2. A landlady who had rented defendant a room entered the room to make it up, and, discovering certain burglar's tools and also property later identified as having been stolen, notified police officers, who searched the room and defendant's personal effects. The officers interrogated the defendant and took the articles found to the police station. *Held,* that the search and seizure was made by the officers as officers, and not as agents of the landlady. p. 59.

3. The room was the defendant's "home," and although, under the agreement with the landlady, she might clean the room and make the bed, she had no right to search his repositories or rummage through his effects, and could not vest the police officers therewith. There was therefore no authority or color of authority on the part of the officers to justify the search and seizure of the property offered in evidence. p. 60.

4. The constitutional right of immunity from unreasonable search and seizure guaranteed by secs. 8 and 11, art. I, Const., is not dependent upon any affirmative act of the citizen. p. 60.

5. The constitutional right of one accused of a felony is just as substantial as that of one accused of a misdemeanor. p. 61.

6. Where an offer of evidence is accompanied with a disclosure that the evidence was obtained through a violation of defendant's constitutional rights by an officer of the state, and where the protection of such rights does not involve an interruption of the usual course of the trial, the evidence should not be received even in the absence of a previous motion to suppress. p. 62.

VINJE, C. J., and ROSENBERRY, J., dissent.

State v. Warfield, 184 Wis. 56.

QUESTION CERTIFIED by the municipal court of Milwaukee county: A. C. BACKUS, Judge. *Answered in the negative.*

For the plaintiff there was a brief by the *Attorney General, George A. Shaughnessy,* district attorney of Milwaukee county, and *George B. Skogmo* and *Roland J. Steinle,* assistant district attorneys, and oral argument by *Mr. Steinle.*

For the defendant there was a brief by *Sullivan & Sullivan,* attorneys, and *Dennis M. Sullivan, Jr.,* and *Eugene J. Sullivan,* of counsel, all of Milwaukee, and oral argument by *Dennis M. Sullivan, Jr.*

OWEN, J.　The defendant was convicted in the municipal court of Milwaukee county of the offense of burglary in the nighttime.　At about 6:30 p. m. of the day preceding defendant's arrest, a rooming-house keeper, from whom he had rented a room, while engaged in making up the room discovered some clothing, a gun, and a flash-light.　She became frightened and called up the police station.　On the following morning three police officers, without a search warrant, or warrant for defendant's arrest, went to the rooming house.　The defendant was absent.　The landlady opened the locked door of defendant's room with her key and permitted the officers to enter.　They searched the room, finding a flash-light, a reflector, and other articles of personal property, consisting of clothing and jewelry.　Before the officers left the room the defendant came in.　They asked him if he occupied the room and he said Yes.　They asked him where he got the suspicious property and he refused to answer.　He said, "You got enough there to convict me without my saying a word.　I will not say no more."　The officers placed him under arrest on suspicion and took him to the police station.　They also took the clothing and other property which they found in the room, to the station

with him. The police officers testified that the defendant made no objection to their taking this property to the police station. The clothing and jewelry were identified at the police station as being property which had been stolen from burglarized houses in the city of Milwaukee a short time previous to the arrest. Defendant was then placed under arrest charged with the burglary of such houses. Upon the trial these articles of personal property were offered in evidence. The evidence leading up to their offer disclosed the manner in which the exhibits had been obtained by the police department. Their reception was objected to on the ground that they were obtained in violation of sec. 8, art. I, and sec. 11, art. I, of the Wisconsin constitution, relating to unlawful search and seizure. The objection was overruled and the exhibits were received in evidence. The defendant was found guilty. An arrest of judgment and stay of proceedings was then granted, and the municipal court has certified to this court the following question:

"Can the articles in question be received in evidence upon the trial of the defendant for the offense of burglary where defendant objected to the receipt of said personal property on the ground that it was obtained in violation of art. I, sec. 8, and art. I, sec. 11, of the Wisconsin constitution, relating to unlawful search and seizure?"

This court is committed to the doctrine that property coming into possession of officers of the state through an unlawful search and seizure by such officers will not be received in evidence in a criminal prosecution against one whose constitutional right to be "secure in their persons, houses, papers and effects against unlawful searches and seizures" has been violated by an officer of the state which guarantees to the citizen that protection. *Jokosh v. State,* 181 Wis. 160, 193 N. W. 976; *Hoyer v. State,* 180 Wis. 407, 193 N. W. 89; *Allen v. State,* 183 Wis. 323, 197 N. W. 808. If the exhibits in question became available as evidence in court by reason of a violation of the defendant's

constitutional right to be immune from unreasonable searches and seizures, such right being violated by the officers of the state, then such exhibits were not admissible in evidence in this case. That they were made available as evidence by reason of a search and seizure is obvious. The first question to be determined is, Who made the search and seizure? Was it made by the police officers or by the landlady?

The only theory upon which it could be said to have been made by the landlady is that she was the principal actor in what transpired and that the police officers were merely acting as her agents and under her direction and not by virtue of their authority or in pursuance of their duties as officers of the law. Plainly, the transaction will not bear such a construction. It may be assumed that the landlady accidentally discovered the existence of the gun, flash-light, and reflector while she was lawfully in defendant's room, and that thereby her suspicions became aroused concerning the character of her roomer. She thereupon called the police station. Manifestly this was not done for the purpose of calling to her assistance trusted agents to assist her in making the search. It was done only for the purpose of advising the officers of the law of certain circumstances which she deemed of a suspicious nature. When the officers came to the house she did not presume to give them any directions. They were not there for the purpose of protecting her interests or securing or enforcing her rights. They were there for the sole purpose of making an investigation with a view of discovering evidence of the commission of crime. They were there for the purpose of making search of defendant's room and his personal effects. They took charge of and conducted the search. They received neither suggestion nor direction from the landlady. Upon the appearance of the defendant they interrogated him. They asked for an explanation of his possession of the discovered property. Upon the refusal to answer their questions they

placed him under arrest on suspicion. They then gathered up the property found in his room and took it to the police station. All this was the act of the police officers acting in their official capacity and in the performance of their official duties. The search and the seizure was plainly that of the officers of the law.

They had no search warrant, neither did they have the consent, express or implied, of the defendant. We may concede that they were lawfully in the house through the landlady's permission or invitation. It by no means follows that they were lawfully in defendant's room. That room was the defendant's home. *People v. Horrigan,* 68 Mich. 491, 36 N. W. 236. And the right of the landlady to enter the room was limited to the purpose of making the bed and cleaning the room, as it appears from the stipulation in the record that "under the agreement of the landlady with this defendant she was supposed to go into the room and make the bed and clean the room." But even conceding their lawful presence in the room, there is a complete absence of any justification for a search of the roomer's repositories or a rummage through his personal effects. The landlady did not have such a right and she could not vest the police officers therewith. The record discloses a complete absence of any authority or any color of authority on the part of the police officers of any kind, nature, or description to justify either the search or the seizure of the exhibits which were offered and received in evidence.

The court stated that the exhibits were received in evidence for the reason that they were taken in the presence of the defendant. The court probably considered that the search and seizure were made under circumstances which implied a waiver by the defendant of his constitutional rights. It is a little difficult to say what the defendant could have done to have prevented the search, at least. That was made in his absence. Neither do we understand that the constitutional right of immunity from unreasonable

search and seizure is dependent upon any affirmative act of the citizen. When this defendant returned to his room he found it in the possession of the three police officers. They placed him under arrest and took not only him, but the property which they had discovered as a result of the unlawful search, to the police station. They assumed to do this by virtue of their official authority. Any resistance or protest on his part would not only have been impotent but would have tended to a breach of the peace. As was said in *U. S. v. Rembert,* 284 Fed. 996, 998:

"It must be first premised that where an officer, politely and decently and without physical threat, has assumed to act in his official capacity, he is acting *de facto,* if not *de jure,* and a peaceful citizen should not forcibly resent the action, even though he knows the officer is, as to the act, greatly exceeding his authority, resting confidently upon the belief that this submission will not impair any of his constitutional rights; for, as the courts have repeatedly held, such action will not be taken to be a consent to an unlawful search or arrest, but merely a peaceful submission to officers of the law."

While it is generally held that the person of one lawfully arrested may be lawfully searched, it does not follow that the residence or room of one so arrested may be searched without a search warrant. But however that may be, such was not the case here. The search and seizure in this case was not made after the arrest of the defendant or because he was believed guilty of crime, but his arrest followed, and was by reason of, the previous unlawful search.

The attorney general refers to the fact that our former cases dealing with this question were cases involving misdemeanors only. We see no reason for this suggestion unless it was the thought of the attorney general that the rule of *Jokosh v. State, supra; Hoyer v. State, supra;* and *Allen v. State, supra,* was not applicable to felonies. Such clearly is not the case. The constitutional right of one

accused of a felony is just as substantial as that of one accused of a misdemeanor.

No motion was made to suppress the testimony obtained as the result of the unlawful search, or to have the property thus unlawfully seized restored to the defendant. As a rule, courts require this motion to be made previous to the trial in order to avoid the necessity of entering upon a collateral inquiry during the course of the trial. However, where the offer of the evidence is accompanied with the disclosure showing that the evidence was obtained through a violation of the defendant's constitutional rights by an officer of the state, and under circumstances where the protection of a defendant in his constitutional rights does not involve an interruption of the usual course of the trial, the evidence should not be received even in the absence of a previous motion to suppress. *Gouled v. U. S.* 255 U. S. 298, 41 Sup. Ct. 261; *Amos v. U. S.* 255 U. S. 313, 41 Sup. Ct. 266.

*By the Court.*—The evidence was improperly received.

VINJE, C. J. (*dissenting*). I am unable to concur in the result reached by the court in this case for two reasons. First, because the rented room did not constitute the *home* of the defendant within the meaning of the constitution relating to searches and seizures; and second, because if there was an unlawful search the defendant waived it when he made no protest or objection to the mode of obtaining the stolen goods, but on the other hand told them "You got enough there to convict me without my saying a word," clearly implying that he made no objection to the manner in which the goods had been obtained by the officers.

But the vital error, in my judgment, in the court's decision is that of regarding a room occupied transiently by a person in a rooming house conducted and occupied by a landlady as equivalent to the *home* of a person within the meaning of the constitutional guaranty referred to. It is

the duty of a rooming-house keeper, as well as of an innkeeper, to run an orderly, lawful house and to use reasonable diligence to see that no part of his premises is used for unlawful purposes. The premises are his though a part thereof is temporarily rented to others. The relation of landlord and tenant does not exist between a rooming-house keeper and those to whom he temporarily rents rooms by the day or week. 14 Ruling Case Law, 504. He is still in the control of all the premises and charged with the duty of exercising reasonable diligence to see that they are not used for unlawful purposes. And if they are used for unlawful purposes the one so unlawfully using them has not the rights of a guest, but is a mere trespasser to whom the innkeeper owes no duty except not to wilfully injure. *Curtis v. Murphy,* 63 Wis. 4, 8, 22 N. W. 825. In that case Curtis registered at a hotel as "Curtis and wife" and was assigned a room, but the woman was not his wife. He delivered $102 to the clerk for safe-keeping. The clerk absconded with the money and Curtis sued the innkeeper to recover it. Held, that he could not recover. The court said:

"One whose status is a guest is a traveler or transient comer who puts up at an inn for a lawful purpose to receive its customary lodging and entertainment. It is not one who takes a room solely to commit an offense against the laws of the state."

The defendant in this case was concealing stolen goods in a rooming house and was guilty of an offense against the state, and therefore could not invoke the protection or. rights of a guest.

When an innkeeper or rooming-house keeper has probable cause for believing that a guest or a roomer is using the assigned room for unlawful purposes, it is not only his right but it is his duty to ascertain whether such is the fact, and the law does not require him to resort to the absurdity of

obtaining a warrant to search his own premises.  He can search it himself, or he can do as the landlady did in this case—call in the police to aid her.

An innkeeper may lawfully enter a guest's room when there is reasonable cause for so doing.  *Jones v. Shannon,* 55 Mont. 225, 175 Pac. 882; Beale, Innkeepers, § 136; 32 Corp. Jur. 566; 14 Ruling Case Law, 504.  The rule is thus stated in 14 Ruling Case Law, *supra:*

"From the very nature of the business it is inevitable that an innkeeper must, at all reasonable times and for all proper purposes, have the right of access to and control over every part of his inn, even though separate parts thereof may be occupied by guests for hire, and he may make and enforce such reasonable rules as may be designed to prevent immorality, or any conduct offensive to other guests, or inconsistent with the recognized proprieties of life.  A room in an inn is not in a legal sense the dwelling house of a guest, and the relation is not that of landlord and tenant, for, notwithstanding the guest's occupancy, it is the house of the innkeeper.  While it is true that when a guest is assigned to a room for his exclusive use it is his for all proper purposes, and at all times, until he gives it up, yet this exclusive right of use and possession is subject to such emergent and occasional entries as the innkeeper and his servants may find it necessary to make in the reasonable discharge of their duties."

It is said in the court's opinion that the right of the landlady to enter the room was limited to the purpose of making the bed and cleaning the room by virtue of a stipulation to that effect between the parties.  It is suggested that a rooming-house keeper cannot thus legally abrogate the duty the law places upon him to see that his premises are not used for unlawful purposes.  Neither can a roomer secure immunity from unlawful acts by such a stipulation.

The case of *People v. Horrigan,* 68 Mich. 491, 36 N. W. 236, cited by the court to the proposition that defendant's room was his home, has no application to the case at bar.

In that case it was held that a lawful conviction of burglary of a dwelling house could be had when the evidence showed that the upper part of a building was used in the daytime as a medical office and a furnished room in the basement was used as a bedroom at night by a single man, that being his only abiding place. In that case the relation of landlord and tenant existed, and the court held that a single person occupying a building permanently constituted that building a dwelling house within the burglary statute.

The law should zealously guard the rights of those accused of crime, but it should not invest them with a mantle of sanctity that prevents their lawful apprehension and conviction.

I am authorized to state that Mr. Justice ROSENBERRY concurs in this dissenting opinion.