701 P.2d 239

**STATE of Idaho, Plaintiff-Respondent,**

v.

**John L. JOHNSON,
Defendant-Appellant.**

**No. 14743.**

Court of Appeals of Idaho.

Jan. 23, 1985.

Rehearing Denied May 21, 1985.

Petition for Review Granted
July 31, 1985.

Kent E. Whittington, Idaho Falls, for defendant-appellant.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., René Fitzpatrick, Deputy Atty. Gen., Boise, for plaintiff-respondent.

Before HUNTLEY, Acting C.J., and McFADDEN and TOWLES, Acting JJ., Special Panel.

HUNTLEY, Acting Chief Judge.

John L. Johnson is charged with violating I.C. § 37–2732, which proscribes the manufacture of a controlled substance. Johnson was held to answer and, before trial, moved to suppress all evidence obtained from a search of his apartment. The trial court denied that motion, and the matter was certified for appeal. We conclude that the trial court erred in denying the motion to suppress, and remand the cause to the trial court for further proceedings consistent with this opinion.

At the hearing on the motion to suppress, police officer Earl Sorenson testified that the landlord, Joe Clevenger, invited him into Johnson's apartment when Johnson was not present. The landlord wanted the officer to observe what Clevenger believed to be "suspicious plants". Clevenger had first seen the plants when he had previously entered Johnson's apartment while Johnson was not at home. Johnson was unaware of and did not consent to the officer's entry into his home. When the officer entered Johnson's apartment at the landlord's behest, he immediately noted several personal effects which clearly indicated to him that someone was residing therein. He then looked behind the door, observed what he believed to be marijuana, left the apartment, obtained a warrant and returned to the apartment to seize the suspected contraband.

The affidavit in support of the warrant stated:

1. Your Affiant received an order to respond to a suspicious call from Joe Clevenger, landlord of the above address.

2. Mr. Clevenger indicated that the individual renting apartment # 7 had been told to move due to non-payment of rent. He further indicated that last night, April 12th, 1982, he had entered the apartment to see if the renter had moved and observed suspicious plants growing in five-gallon buckets.

3. On this date, April 13, 1982, your Affiant was requested by Mr. Clevenger to enter the apartment and observe these plants and was let into the apartment by Mr. Clevenger and observed said plants.

4. Based upon your Affiant's experience, he believes the plants to be marijuana and further believes that due to the large number of plants, additional usable material, paraphernalia and records will be located in said apartment.

Items 3 and 4 of the affidavit were based on the officer's personal observations while inside Johnson's home. Johnson argues that items 3 and 4 ought to be excised from the affidavit because they are the fruits of the poisonous tree, i.e. the officer's warrantless and unjustified entry into his home. He claims that if items 3 and 4 are excised from the affidavit, the affidavit does not contain sufficient non-conclusory information to permit the magistrate to find probable cause for the issuance of the warrant. We agree with both propositions.

There were three searches in this case. The first search, that conducted by the landlord, presents no problem for Fourth Amendment analysis as the Fourth Amendment proscribes only governmental action; a search by a private individual does not fall within Fourth Amendment

proscriptions. *Burdeau v. McDowell*, 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048 (1921).

 Our inquiry focuses on the second and third searches, those conducted by the officer. Clearly, Johnson had a legitimate expectation of privacy in his home. There was no evidence that he had abandoned his residence. On the contrary, the only evidence was that he was still residing there. The evidence adduced at the hearing and the arguments presented by counsel did not clearly establish whether the rental period had expired. Even if the rental period had expired, however, this does not inevitably terminate Mr. Johnson's justified privacy expectation, for it may generally be said that a tenant would be justified in expecting the landlord to resort to the eviction procedures required by law rather than to self-help. *United States v. Botelho*, 360 F.Supp. 620 (D.Hawaii 1973). Because the home "is accorded the full range of Fourth Amendment protections,"[1] it is beyond question that an unconsented police entry into a residential unit, be it a house, apartment, or hotel or motel room, constitutes a search.[2] *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). *See* W.R. LaFave, Criminal Procedure, Vol. 1, pp. 169–171 (1984).

Officers may only conduct a search of an individual's home without first obtaining a search warrant where the search is incident to an arrest,[3] in response to exigent circumstances,[4] or where there is proper consent.[5] In the instant case, the officer did not have probable cause to arrest Johnson, nor did he have an arrest warrant. There were no exigent circumstances which justified entry without a warrant. The only possible basis upon which the officer might lawfully have entered the apartment would be the landlord's consent. We therefore inquire whether the landlord had the authority to consent. In the seminal decision of *United States v. Matlock*, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974), the United States Supreme Court concluded:

> That when the prosecution seeks to justify a warrantless search by proof of voluntary consent, it is not limited to proof that consent was given by the defendant, but may show that permission to search was obtained from a third party who possessed an authority over or other sufficient relationship to the premises or affects sought to be inspected.

The Court then explained what it meant by "common authority":

> Common authority is, of course, not to be implied from the mere property interest a third party has in the property. The authority which justifies the third-party consent does not rest upon the law of property, with its attendant, historical

---

1. *Lewis v. United States*, 385 U.S. 206, 87 S.Ct. 424, 17 L.Ed.2d 312 (1966).

2. The State submits that police viewing of suspected contraband derived as the result of a private search is not a search within the meaning of the Fourth Amendment as long as the view is confined to the scope and product of the initial search. The cases cited by the State, however, pertain to situations where an individual has turned over to the government the results of a private search. In such cases, the suspected contraband comes into plain view of the authorities through no illegal act on their parts. In the instant case, however, the suspected contraband was not turned over to the authorities; instead the landlord invited the officer to enter a private dwelling to observe the contraband first-hand. In this case, the suspected contraband was not in plain view; and the landlord had neither personally seized nor delivered it to the police. The *officer* had to enter the private dwelling in order to see it. The fact that the Fourth Amendment does not reach the landlord does not mean that the officer, a government official, is also immune from its sanctions simply because he accompanied the landlord.

3. *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980).

4. *United States v. Rubin*, 474 F.2d 262 (3d Cir. 1973), certiorari denied; 414 U.S. 833, 94 S.Ct. 173, 38 L.Ed.2d 68; *United States v. Perez*, 440 F.Supp. 272 (N.D.Ohio 1977), affirmed 571 F.2d 584 (6th Cir.), certiorari denied 435 U.S. 998, 98 S.Ct. 1652, 56 L.Ed.2d 88 (upholding warrantless search for explosives); *State v. McCleary*, 116 Ariz. 244, 568 P.2d 1142 (1977) (upholding warrantless search for bound and gagged robbery victims).

5. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).

and legal refinements, ... but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.

■ It may generally be said that a lessor who has granted the lessee exclusive possession over a certain area may not, during the period of the tenancy,[6] give an effective consent to a police search of that area. This is so whether the arrangement involves the rental of a house,[7] an apartment,[8] a room in a rooming house,[9] hotel[10] or even a locker.[11] The rule is not otherwise merely because the lessor has by express agreement or by implication reserved the right to enter for some special and limited purpose. In this case, at best, the landlord may have believed that he and the tenant had a good faith dispute as to whether the tenant owed additional rent. However, he knew that he had not evicted Johnson and that Johnson had not abandoned the apartment, as all of his personal possessions were still there. The landlord simply had no authority to consent to the officer's entry. Hence, the officer's entry was unlawful and violated Mr. Johnson's legitimate expectation of privacy in his home which is protected by the Fourth Amendment. Since items 3 and 4 set forth in the affidavit in support of the warrant were the result of the officer's personal observations made while unlawfully on the premises, such statements were clearly the "fruit of the poisonous tree" and must be deleted from the affidavit. *Wong Sun v.*

*United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

However, where the police have a source independent of the illegality from which they would have discovered the challenged evidence, the evidence seized is nonetheless admissible. *Silverthorne Lumber Co. v. United States,* 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920). Since items 1 and 2 of the affidavit were not derived from nor exploitive of any illegality, we consider whether these items, standing alone set forth sufficient non-conclusory facts to permit a magistrate to find probable cause for the issuance of a search warrant. *Henry v. United States,* 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959); *United States v. Harris,* 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971). In *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the United States Supreme Court abandoned the "rigidity" of the "two-pronged test" established by *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969) which required an affiant to set forth facts showing that an informant was reliable and his or her information was credible. The Court stated:

> In its place we reaffirm the totality of the circumstances analysis that traditionally has informed probable cause determinations ... The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons applying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing

---

**6.** The tenancy ends, at least for Fourth Amendment purposes, upon abandonment by the tenant. *Abel v. United States,* 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960).

**7.** *Chatman v. United States,* 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961).

**8.** *People v. Boorem,* 184 Colo. 233, 519 P.2d 939 (1974).

**9.** *State v. Warfield,* 184 Wis. 56, 198 N.W. 854 (1924).

**10.** *Stoner v. California,* 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964).

**11.** *People v. Miller,* 19 Ill.App.3d 161, 310 N.E.2d 808 (1974).

court is simply to insure that the magistrate had a "substantial basis for ... concluding" that probable cause existed ... we are convinced that this flexible, easily applied standard will better achieve the accommodation of public and private interests that the Fourth Amendment requires than does the approach that has developed from *Aguilar* and *Spinelli.* *Illinois v. Gates* at p. 2332.

In *State v. Lang,* 105 Idaho 683, 672 P.2d 561, 567 (1983), this Court adopted the *Gates* formulation. We note, however, that the *Gates* majority emphasized "that an informant's 'veracity,' 'reliability,' and 'basis of knowledge' are all highly relevant in determining the value of his report." *Gates* at 2327. The *Gates* majority also reaffirmed the principle that "sufficient information must be presented to the magistrate to allow *that official* to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others." *Gates* at 2332. (Emphasis added).

▮ In the instant case the State would have us accept the proposition that the landlord was simply a citizen informant. Such citizen informants are usually deemed reliable. Yet the landlord may not have been a typical "citizen informant" in that he had some dispute with Johnson about whether he should continue his tenancy. The facts of this case give rise to the inference that the landlord may not have been motivated solely by a sense of "good citizenship"; instead he may have been motivated by vindictive feelings toward a tenant with whom he was in some disagreement. More problematic, however, is the fact that the actual information provided by the informant landlord was totally conclusory in nature. The only information Clevenger conveyed to the officer was that Clevenger had observed "suspicious plants" growing in five-gallon buckets. Clevenger did not tell the officer in what way the plants were "suspicious" or, if he did, the officer did not relate that information to the magistrate in the affidavit. Without more, we have only speculation,

innuendo and a bare conclusion. If, in fact, by "suspicious" the landlord meant that he thought the plants were marijuana, the affidavit presents no information from which the magistrate could reasonably conclude that the landlord would know marijuana when he saw it. There was no information that Clevenger knew what a marijuana plant looked like. The landlord did not describe the plants' sizes, the shape and number of their leaves, or their color so that the officer and magistrate could assess whether the plants were, in fact, probably contraband.

In a similar case, *State v. Woodall,* 100 Wash.2d 74, 666 P.2d 364 (1983), the Washington Supreme Court reversed two convictions for the possession of a controlled substance where the search was conducted pursuant to a warrant based on an affidavit which stated:

A reliable informant who has proven to be reliable in the past has given information to Duane Golphenee that he/she has been in the house within the last twelve hours and had personally observed marijuana being used in the house. The informant is familiar with the appearance of marijuana.

In analyzing the sufficiency of this affidavit, the Washington court used the *Aguilar-Spinelli* formulation. However, in a footnote, the Washington court observed that, after *Woodall* was written, the United States Supreme Court decided *Illinois v. Gates,* which disapproved of a rigid adherence to the Aguilar-Spinelli standards. Nonetheless, the Washington Court remarked, "The conclusory affidavit provided to the magistrate in the instant case was inadequate under *any test."* *Woodall, supra,* at 367. (Emphasis added).

The affidavit in the instant case is likewise conclusory and even less specific as to the basis or meaning of the landlord's suspicions. As the affidavit did not establish probable cause, the warrant should not have issued; the search pursuant thereto was not lawful and the evidence seized in the course of the search must be suppressed.

Reversed and remanded for further proceedings consistent with this opinion.

McFADDEN and TOWLES, Acting JJ., concur.

## ON DENIAL OF PETITION FOR REHEARING

HUNTLEY, Acting Chief Judge.

We deny the State's Petition for Rehearing; however, two of the issues raised in the petition merit extended discussion.

■ We first address the State's objection to our characterizing the officer's entry in to the private residence as a "search." The State would prefer that we label his entry a "viewing." The State contends that where an officer merely "views" the fruits of a private search, the fourth amendment does not come in to play.[1] The state relies on *State v. Pontier,* 103 Idaho 91, 645 P.2d 325 (1982) wherein the Idaho Supreme Court held that where private citizens searched a package and revealed the contents to California law enforcement officials, and where the California officials, having the contents in plain view, lawfully seized the package and forwarded it to Idaho officials, alerting the Idaho officials as to the identity of the package, the Idaho officials did not need a search warrant to open the package as it had been in a state of "constant seizure." Although we explained the crucial distinction between the *Pontier* "plain view" situation and the facts of the instant case in Footnote 2 of our Opinion, the State insists that even where the evidence seized is not *turned over to the state* by the private individual, but is seized when the officer *follows the individual into another's residence,* that the fourth amendment does not apply. In support of this proposition, the State cites *Eisentrager v. Hocker,* 450 F.2d 490 (9th Cir.1971). In *Eisentrager,* a landlady had reason to believe that her tenant had vacated his apartment. She entered the apartment and found the corpse of the tenant's wife hidden under a blanket in a closet. In *Eisentrager,* the court stated, "the presence of the hidden corpse was the strongest possible evidence to lead her (the landlord) to believe that Eisentrager had abandoned the apartment...." After finding the corpse the landlady called the police who entered the apartment. The *Eisentrager* court concluded that upon finding the corpse the landlady, as owner, had a right to take possession of the apartment, and to invite the police to enter and search. Thus, at the time the officers entered that apartment Eisentrager no longer had a reasonable expectation of privacy in it. The facts of the instant case, of course, are otherwise. At the time the officer entered Johnson's residence, Johnson clearly retained a legitimate expectation of privacy in it. *United States v. Salvucci,* 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980); *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

Recently, in *United States v. Jacobsen,* 466 U.S. 109, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984) the court held that where employees of a private freight carrier observed a white powdery substance in the innermost of a series of four plastic bags that had been concealed in a tube inside a damaged package belonging to the defendants, replaced the items, put them back in the box and notified the Drug Enforcement Administration, the federal agents did not violate the defendants' reasonable expectation of privacy when they observed the already open box and removed the plastic bags, again bringing the white powder into view. In *Jacobsen,* the Court concluded that it is constitutionally reasonable for law enforcement officials to seize without a warrant "effects" that cannot support a justifiable expectation of privacy, based on probable cause to believe they contain contraband.[2]

---

1. Semantical wordplay aside, the officer's *observations* were the direct fruit of his *unlawful entry* and it was that unlawful entry which tainted all fruit, including observations, resulting therefrom.

2. In *Jabobsen,* it appears that absent the initial intrusion into the package by the private citizens, the government officials could not have opened without a warrant and in the absence of circumstances creating a recognized exception

However, the decision in *Jacobsen* was based in part on the minimal intrusion involved in the governmental search of an unwrapped package, and has never been used to justify an invasion of privacy as substantial as entry into a *house*. (Emphasis added.) *People v. Brewer*, 690 P.2d 860 (Colo.1984).

The State's position, if logically extended, would produce the absurd result that an individual could enter another's private home, ransack every room, rifle through drawers, closets, personal effects, and then, assuming that individual thought he or she had found evidence of a crime, invite officers in to take a look. According to the State, so long as the officer merely *viewed* the handiwork of the overly-zealous citizen, there would be no search even where, as in the instant case, there was no proper consent, no exigent circumstances, no search warrant and no arrest warrant. This type of reasoning is clearly aberrational in light of the great weight of authority reflecting traditional fourth amendment jurisprudence. We must conclude that the authors of the fourth amendment could not have intended to sanction the kind of police conduct which the State in its petition now asks us to approve.

The State also submits that under the holding in *United States v. Leon*, — U.S. ——, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the challenged evidence should not be suppressed. *Leon* held that even where a search warrant does not issue upon probable cause, so long as the officer relied upon the warrant in objective good faith the exclusionary rule need not apply.

■ Under the "good faith" exception, a court still retains the power to exclude evidence in those cases where deterrence can be achieved. Specifically, the exclusionary rule is retained in the following situations: (1) where a magistrate or judge plainly had "no business" issuing a facially deficient warrant; (2) where a magistrate or judge relied on false or misleading information; (3) where the warrant clearly lacks a probable cause basis; and (4) where a judge or magistrate wholly abandons his or her role as a neutral and detached decisionmaker. *Leon, supra*, 104 S.Ct. at 3421–22.

Significantly, Johnson appeals the denial of his suppression motion citing both the fourth amendment to the United States Constitution *and* art. I, § 17 of the Idaho Constitution. We observe that as of this writing the Idaho Supreme Court has not yet determined whether the Idaho Constitution should be interpreted in precisely the same manner as the United States Supreme Court interpreted the Federal Constitution in *Leon*. However for the purpose of this analysis, it is unnecessary to address that question as we conclude that *Leon*, even if adopted by our Supreme Court, would not apply to the instant case.

In our view, *Segura v. United States*, — U.S. ——, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984) provides a fifth exception to the four *Leon* "good faith" exceptions delineated above. *Segura* reiterates the principles set out in *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) and its progeny that evidence which is the fruit of the poisonous tree and for which the taint has not been purged must be suppressed.

■ The exclusionary rule is a judicially prescribed remedial measure and as with any remedial device, the application of the rule has been restricted to those areas where its remedial objectives are most ef-

---

to the warrant requirement, a package in which the defendant-owners would have retained a legitimate expectation of privacy.

Although the Idaho Supreme Court has not had occasion to address whether the *Jacobsen* holding comports with art. I, § .17 of the Idaho Constitution, we express reservations about the wisdom of a rule wherein one's "legitimate expectation of privacy" from unwarranted governmental intrusion into one's "effects" depends on

the fortuitous circumstance of whether a private citizen has invaded the privacy interest prior to the police "viewing". If the private citizen's observations are such as to furnish the officer with information sufficient to justify a finding of probable cause, there should be no reason to dispense with the necessity of obtaining a search warrant absent the presence of exigent circumstances.

fectively served. Under the United States Supreme Court's holdings, the exclusionary rule reaches not only primary evidence obtained as a direct result of an illegal search or seizure, but also evidence later discovered and found to be derivative of an illegality or "fruit of the poisonous tree." It extends as well to the indirect and the direct products of unconstitutional conduct. *Segura v. United States*, —— U.S. ——, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984).

■ The United States Supreme Court has, of course, allowed admission of evidence, notwithstanding a prior illegality, when the link between the illegality and that evidence was sufficiently attenuated to dissipate the taint. Its cases make clear that evidence will not be excluded as "fruit" unless the illegality is at least the "but for" cause of the discovery of the evidence. Suppression is not justified unless "the challenged evidence is in some sense the product of illegal government activity." *Segura, supra,* 104 S.Ct. at 3391–92.

■ *Segura* and *Leon* were both decided on July 5, 1984. *Leon* does not directly confront the issue of whether, when the only information in the affidavit that could have provided probable cause was illegally obtained, such illegality irreparably taints the warrant absent a prosecutorial showing that the taint had been purged. However, *Segura* implicitly indicates that such an unpurged illegality irreparably taints the warrant. *U.S. v. John D. Rule,* 594 F.Supp. 1223 (D.C.Me.1984) specifically held that where the only information set forth in an affidavit which would support a finding of probable cause had been illegally obtained, the search warrant had been irreparably tainted and the evidence seized pursuant thereto was suppressed. *Id.* at 1245–46. In reaching that determination, the Maine Court relied on *Segura.*

In the instant case, the officer's illegal entry into Johnson's residence clearly contributed in a significant way to the seizure of the evidence taken under the warrant. In fact, the magistrate should not have issued the warrant but for the officer's statement that he had seen the marijuana plants. Hence, the "but for" test is satisfied in the instant case. In *Segura,* none of the information on which the challenged warrant was secured was derived from or related in any way to an initial unwarranted entry into the defendant's apartment; the information supporting the warrant came from sources wholly unconnected with the initial entry and was known to the agents well beforehand. In *Segura,* the information possessed by the agents before they entered the apartment constituted an independent source for the discovery and seizure of the evidence challenged. The challenged evidence was discovered during a search conducted under a valid warrant, was the product of *that* search and was wholly unrelated to the initial entry.

In the instant case, of course, the entry pursuant to the warrant was not "wholly unrelated" to the prior entry but was instead directly connected to and based upon that prior entry, which we have found to be unlawful. The circumstances in the case at bar do not permit a reasonable inference that absent the issuance of the warrant based on the officer's unlawful conduct, there was an "independent source" unrelated to the unlawful conduct,[3] or that the evidence would have inevitably been discovered.[4] Thus, *Leon* would not apply.

Moreover, *Leon* specifically held that suppression is required where it will serve a deterrent purpose. It is obvious that the circumstances of the case now under review, though not squarely fitting into any of the four specifically delineated "good faith" exceptions, nonetheless present a situation where deterrence can be achieved by suppression of the disputed evidence.

In *Massachusetts v. Sheppard,* —— U.S. ——, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984), a companion case to *Leon,* the U.S. Supreme Court stated "the exclusionary rule

---

**3.** *Silverthorne Lumber Co. v. United States,* 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920).

**4.** *Nix v. Williams,* —— U.S. ——, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984).

was adopted to deter unlawful searches by police, not to punish the errors of magistrates and judges." In the instant matter, we deal with a case which arose out of an initial unlawful entry into a private dwelling by a police officer. Were we to approve of the search of Johnson's residence we would, in effect, be holding that an officer can in "good faith" rely on his or her own unlawful conduct. Where the officer acted unlawfully in the first instance, that taint·cannot be washed clean by virtue of the magistrate's understandable but, in this case, incorrect, assumption that the information set forth by the officer-affiant was lawfully obtained. In short, the purpose of the exclusionary rule is to deter police misconduct; and deterrence will not be achieved if we permit the admission of the challenged evidence in this case.

In footnote 20, the *Leon* court advised: The objective standard we adopt, moreover, requires officers to have a reasonable knowledge of what the law prohibits. *United States v. Peltier,* 422 U.S. 531, 542, 95 S.Ct. 2313, 2320, 45 L.Ed.2d 374 (1975). As Professor Jerold Israel has observed: "The key to the [exclusionary] rule's effectiveness as a deterrent lies, I believe, in the impetus it has provided to police training programs that make officers aware of the limits imposed by the fourth amendment and emphasize the need to operate within those limits...." *Leon, supra,* 104 S.Ct. at 3420, n. 20.

In *Sheppard, supra,* a police officer obtained substantial evidence linking the defendant to a murder, and subsequently prepared an affidavit that set forth facts sufficient to establish probable cause to support a search warrant. Unable to find a suitable. warrant form, however, the officer used a standard "controlled substances" warrant form that he modified as best he could. He presented the affidavit and the warrant to a judge who made some minor alterations and signed the warrant. However, the judge did not alter the substantive portions of the warrant that only authorized a search for controlled substances.

Relying on the apparent legality of the altered warrant, the police searched Sheppard's residence and recovered several items that tied Sheppard to the murder. At trial, the court suppressed the evidence because of the warrant's facial defects. On appeal, the United States Supreme Court reversed the trial court's suppression order deciding that the officer acted in "good faith." The Court acknowledged that while "an error of constitutional dimensions may have been committed with respect to the issuance of the warrant ... it was the judge, not the police officers, who made the critical mistake." *Id.,* 104 S.Ct. at 3429. Because the *judge* had committed the crucial error, the Court refused to suppress the evidence. As the *Leon* court stated, "Judges and magistrates are not adjuncts to the law enforcement team; as neutral judicial officers, they have no stake in the outcome of particular criminal prosecutions. The threat of exclusion thus cannot be expected to significantly deter them." *Leon, supra,* 104 S.Ct. at· 3418. Hence, deterrence is only obtained by punishing the *police* when they are unreasonable and by forebearing to punish them when they are reasonable.

In *Rule,* 594 F.Supp. at 1247, the Court stated that the good faith of government actors in the warrant process insulates an error in that process from the consequence of suppression only where the government has provided the magistrate with that information properly necessary to the performance of his function and *the error is that of the magistrate.* In *Rule,* as here, it was not a magistrate's error that created the warrant's defect. Here, the magistrate relied upon the officer's information as set forth in the affidavit only because he was unaware that that information was obtained by unlawful conduct. The *Rule* court stated:

The critical nature of the need for complete sanctity in the warrant process is · now reinforced by a recent turn in legal doctrine. Under *United States v. Leon* (citation omitted), suppression of evidence is allowed in only the most restricted of circumstances where the seizure

occurs in reliance upon a facially valid warrant. Thus, the preservation of Fourth Amendment values is left now almost entirely to the sanctity of the magisterial process in determining probable cause on an application for a warrant. It is, therefore, more important than ever that no opportunity, much less any encouragement, be given for a substantial error to creep into that process by permitting the magistrate to be unknowingly deprived of available information that has a potentially significant bearing on his probable cause determination.

Moreover, *Leon* does not create a blanket rule of admissibility for all evidence seized pursuant to a defective warrant. The *Leon* court stated:

In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient .... Penalizing the officer for the magistrate's error rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations. 104 S.Ct. at 3420.

For instance, in *Sheppard, supra,* the error asserted involved a "facial" defect that a reasonably prudent police officer could not have been expected to detect. Moreover, *Sheppard* involved a mistake that, when considered in the context of the entire record, had no tangible impact on the defendant's rights. In contrast, the officer's conduct in the instant case clearly had an impact on Johnson's right to and legitimate expectation of privacy in his home as guaranteed by the fourth amendment to the United States Constitution.

Moreover, the error of which Johnson complains is not a mere technical, procedural, clerical, ministerial, or otherwise insignificant error. His right to be secure in his home was violated; that violation provided the information upon which the magistrate relied in concluding there was probable cause so that the warrant might issue; and as the prosecution did not purge the taint, the warrant was irretrievably tainted.

In *Collins v. Florida,* 465 So.2d 1266 (Slip Op., February 22, 1985, District Court of Appeal of Florida, Second District) the court, in interpreting *Leon,* held that a search warrant unsupported by an oath does not present a "mere technicality that good faith can cure." The Florida court observed:

An oath is basic to the validity of the supporting affidavit and the ensuing warrant. It has often been held that statutes and rules authorizing searches and seizures must be strictly construed. Therefore, affidavits and warrants must meticulously conform to statutory and constitutional provisions ... "[s]ave for the First and Fifth Amendments, the Fourth Amendment, from which we receive Section 12 to Article I of our own Florida Constitution, is probably most important to the liberty of all freedom loving citizens. One cannot sit idly by and observe its meaning be slowly eroded away even by well-meaning police and prosecutors." *Collins, supra,* at Slip Op. p. 51 citing *Hesselrode v. State,* 369 So.2d 348 at 351 (Fla.App.1979).

Likewise, a finding of probable cause, tainted by statements resulting from unlawful police conduct, is not a "mere technicality" which "good faith" can cure. If anything, the instant case presents circumstances much more egregious than an officer's failure to swear to the affidavit in support of a warrant.

In contrast to *Collins, Ohio v. Wilmoth* (Slip Op., December 5, 1984, Court of Appeals of Ohio, Ninth Appellate District) held that where the record revealed that the officers failed to take the oath *prior* to seeking the warrant but, once their testimony had been transcribed, signed affidavits verifying the correctness of what they believed was their "sworn" testimony, any error rendering the warrant defective was based on the magistrate's technical failure to use the proper words in administering the oath. The issuance of the oath was totally within the control of the *magistrate.* Thus, the officers were justified in

assuming that the magistrate had properly administered the oath.

Another example of the kind of "technical" error which will not invalidate a warrant was discussed in *Ohio v. David Foster* (Slip Op., September 4, 1984, Court of Appeals). In *Foster*, a warrant made initial reference to paragraph 2 when it was intended that it refer to paragraph 3. However, the court considered the language preceding the mistaken draftsmanship, and concluded it was inconceivable that there was any misunderstanding between the trial court and the police at the time the warrant issued, or any serious dispute as to the order's intent. Since the wrong paragraph reference did not cause any misunderstanding or misguide anyone in the issuance and execution of the search warrant, the court declined to rule the warrant invalid.

In the instant case, we are not confronted with a magistrate's procedural, technical, clerical, or ministerial error. Rather, we are confronted by a *significant police* error. We have before us a warrant supported by an affidavit setting forth statements in support of a finding of probable cause which were the result of unlawful *police* activity. In addition to the authority cited in our initial opinion in *Johnson*, there are other recent cases supporting our *Johnson* holding. In *People v. Brewer*, 690 P.2d 860, the People argued on appeal that the challenged search could be justified in four possible ways. They claimed that the defendants had abandoned their house, that the owner had authority to consent to the search and that one of the defendants consented to the search. Finally, the People argued that a state statute creating a "good faith" exception to the exclusionary rule should be applied in that case. The Colorado Supreme Court rejected each of these contentions. *Brewer* is particularly significant because, if anything, the record there would more likely support a finding of tenant abandonment and/or proper owner consent than the record in *Johnson*.

Another factually similar case wherein a court disapproved an unwarranted entry into a defendant's apartment is *Minnesota v. Houston*, 359 N.W.2d 336 (Slip Opinion, December 18, 1984 Court of Appeals of Minnesota). On facts similar to those in *Johnson*, the Minnesota court concluded that nothing in the record showed the basis for the landlord's belief that the tenant may have left or that the premises were in fact abandoned. The Minnesota court did not accept the State's urging that the court adopt a "good faith" exception which would justify the police conduct *absent* a facially valid warrant.

### CONCLUSION

Where an officer unlawfully enters a residence and then uses his or her observations resulting from that entry to support an assertion of probable cause in an affidavit for a search warrant, deterrence will not be achieved if the officer can escape the impact of the exclusionary rule by having a magistrate, who would have no reason to know that the entry was unlawful, sign a warrant upon which the officer could later claim to have relied in "good faith".

 It follows that here the exclusionary rule should be applied to bar the use in the State's case-in-chief of evidence obtained by the police acting in reliance on a search warrant that was irreparably tainted by the officer's initial unlawful and unpurged conduct. We therefore deny the State's Petition for Rehearing.

McFADDEN and TOWLES, Acting JJ., concur.