COMMONWEALTH *vs.* HARRY C. MARTIN.

Hampden. September 21, 1970. — December 3, 1970.

Present: SPALDING, CUTTER, SPIEGEL, REARDON, & QUIRICO, JJ.

*Search and Seizure. Husband and Wife*, Consent to search of marital premises. *Supreme Judicial Court*, Argument. *Robbery. Breaking and Entering.*

A search by police of the house of a defendant charged with armed robbery while masked, made without a warrant and without the defendant's consent and in his absence, but while his wife was living in the house and pursuant to her oral and written permission when the police arrived there, was valid against the defendant, notwithstanding antagonism then existing against him by her, and seizure of ski masks from the "utility closet" was lawful. [288–290]

An issue in a criminal case that a search of the defendant's house pursuant to a search warrant was invalid was treated by this court as

waived since it was mentioned in the defendant's brief only in the "summary of argument."   [290]

At the trial of indictments for armed robbery while masked and other offences relating to the robbery of a man in his home one evening by two masked, armed men who tied and bound the victim with clothesline rope, evidence, largely circumstantial and principally testimony of the defendant's wife and of the victim, warranted a conclusion that the defendant had committed the crimes charged, notwithstanding contradictory statements or prior inconsistent statements by certain witnesses. [290–291]

THREE INDICTMENTS found and returned in the Superior Court on May 7, 1969.

The cases were tried before *Noonan,* J.

*Efrem A. Gordon* for the defendant.

*Matthew J. Ryan, Jr.,* District Attorney, for the Commonwealth, submitted a brief.

QUIRICO, J.   The defendant is appealing under G. L. c. 278, §§ 33A–33G, after conviction and sentence on three indictments charging him with the following crimes allegedly committed on January 30, 1969: robbery from James Brown, being armed with a revolver and while masked and disguised; breaking and entering the dwelling house of Brown in the nighttime while armed, with the intent to commit a felony, and assault on Brown; and assault and battery on Brown.

The case is before us on the defendant's claim of errors by the trial court in the denial of his motions to suppress evidence and for directed verdicts of not guilty. Additional errors alleged by the defendant but not argued in his brief are deemed waived. *Commonwealth* v. *Gliniecki,* 339 Mass. 464, 466.

We summarize the evidence in its light most favorable to the Commonwealth to the extent necessary for consideration of the motions for directed verdicts. At all times material to this case the defendant and his wife lived together in a house at 53 Lyons Street in Springfield. He had not been employed from July, 1968, to January 30, 1969. He left his house at about 5 P.M. on the latter date, wearing a ski parka, and taking with him a revolver, two ski masks

Commonwealth *v.* Martin.

and a piece of his wife's clothesline. The revolver was kept by him in a cigar box in a cabinet in the kitchen. He had brought the masks to the house about a week before.

The defendant returned to his house about 1 or 1:30 A.M. of the next day. At that time he threw the following articles on the kitchen table: (a) the two ski masks which he had taken with him when he left the evening before, and (b) five or six bills of $100 each. About $300 of the money was used to buy groceries and to pay household bills. His wife saw and testified to all of the defendant's actions which are described in this and the preceding paragraph.

James M. Brown, who lived at 125 Deep Wood Drive in Longmeadow, left his house about 7:30 P.M. on January 30, 1969. When he returned about an hour later there were two masked men in his kitchen. One of them told him, "this is a holdup." Both men were dressed in dark blue coats and trousers. The taller of the two was wearing a full mask and was armed with a pistol. The shorter one was wearing a half mask with goggles over his eyes and was armed with a club. The two men grabbed Brown, pushed him into the living room, shouted at him, asked him where the money was and threatened him with bodily harm if he did not tell them. They tore his trousers and took $1,050 from a trouser pocket. The sum consisted of ten bills of $100 each, two bills of $20 each and one bill of $10.

Brown tried to escape from the robbers but they caught him and tied his hands and feet with clothesline rope. They told him not to say a word or he would be killed. The taller of the two men did most of the talking during the robbery, and he had a definitely high voice. The shorter man spoke with an accent. The robbers then pulled the telephone from the wall and left the house. Brown worked himself loose in about five to seven minutes and called the Longmeadow police from another telephone in the house. He checked and found that the hatchway door to the cellar was open, the lock was torn off the door to the cellar, and that his camera and three suits were missing from the house.

About a week and a half after January 30, 1969, the defendant's wife, in his presence, looked up the telephone number of Brown of 125 Deep Wood Drive, Longmeadow. She then dialed his number as shown in the telephone directory, and handed the telephone to her husband after she heard someone ·pick up the telephone on the other end. The defendant then spoke into the telephone, using "obscene language," swearing and asking the person on the other end of the line to hang up. He told the person on the other end he would give him ten seconds to hang up, and then started to count in "a weird, low voice." When he got to eight his wife hung up the telephone.

Brown testified that about a week and a half to two weeks after he was robbed he received a telephone call from a person who threatened him with bodily harm and used foul language, and then the "phone was hung up." He recognized the voice of the caller as that of the taller of the two men who robbed him.

On another occasion after the robbery the defendant's wife, in his absence, called Brown by telephone and spoke to him. As a result of that call Brown called the Longmeadow police. A couple of days later, on February 15, 1969, the chief and a sergeant of the Longmeadow police and a .detective of the Springfield police went to the defendant's house. When they arrived the defendant's wife was there but he was not. She gave the police permission, both orally and in writing, to enter and search the house. In their search the police found and took the two ski masks mentioned above from what the defendant's wife described as "my utility closet." The police showed the masks to the defendant who said they were similar to some masks he had at his house and which he used when shoveling snow, but he denied any knowledge or connection with the robbery. The defendant was then in custody on another charge.

On February 22, 1969, the chief and a sergeant of the Longmeadow police and a member of the Springfield police went to the defendant's house and found him at home. The

police had two warrants in their possession. One was for the arrest of the defendant on the present charges. The other was to conduct a search of his house for a small gun, a ski jacket of a dark blue color on one side and medium blue color on the other side, clothesline and a cigar box and its contents. The police arrested the defendant and searched the house. They found and took a jacket which was ultimately introduced in evidence, and also two pieces of clothesline, the cigar box and its contents consisting of $1.59 in pennies and some money order receipts.

The defendant's wife testified that the two ski masks taken by the police from the defendant's house on February 15, 1969, were those which he took with him when he left the house on January 30, 1969, and which he had with him when he returned early the next morning. She identified the cigar box taken by the police from the defendant's house on February 22, 1969, as the box from which the defendant took the gun when he left the house on January 30, 1969.

Brown testified that the two masks resembled those worn by the two robbers at his house; and he testified that the blue jacket taken by the police from the defendant's house on February 22, 1969, resembled in color the jacket worn by one of the robbers. He was not able, with any degree of certainty, to identify either of the two robbers as being in the court room when he was testifying.

The defendant alleges error in the denial of his motion to suppress the two ski masks which were taken by the police when they searched his house on February 15, 1969, in his absence, without his consent and without a search warrant. However, that search was made with the oral and written consent of the defendant's wife who was present and was living in the house at that time. The defendant does not contend that his wife did not consent, or that her consent was coerced by police action. Thus the facts of the case before us are different from those in *Amos* v. *United States*, 255 U. S. 313, 317, where the court said, "We need not consider whether it is possible for a wife, in the

absence of her husband, thus to waive his constitutional rights, for it is perfectly clear that under the implied coercion here presented, no such waiver was intended or effected." [1]  We must decide whether the police search of the defendant's house on February 15, 1969, is valid against him by reason of his wife's consent thereto.  Our consideration of the case is not hampered by any peripheral doubts whether the wife in fact consented or whether she merely acquiesced or was coerced into consenting to the search.

The defendant's sole argument on this point is that since the police search of his house on February 15, 1969, was made without a warrant and without his consent, and his wife had neither express nor implied authority to consent for him, the search was invalid.  It is obvious on the record before us that he did not expressly authorize his wife to consent for him.  We assume that no authority to give such consent should be implied from the sole fact of the marital relationship between the spouses, but we do not feel required to decide that question in this case.  We do not rest our decision on the implication of any interspousal agency for such purpose arising solely from the marital relationship.

There have been many decisions by courts of the United States and various States dealing with searches made without a warrant and upon the invitation or consent of a person other than the ultimate defendant.  In many cases the person inviting or consenting to the search was a relative, usually the wife, of the ultimate defendant; and in other cases he was not such a relative but he had some right to, or connection with, the premises searched.  These decisions have been collected and discussed in numerous articles in

---

[1] This same question seems to be before the Supreme Court of the United States again in *Coolidge* v. *New Hampshire,* 399 U. S. 926, wherein certiorari was granted on June 29, 1970, after decision in *State* v. *Coolidge,* 109 N. H. 403. The case seems to involve not only the legal question of the effect of a search on consent by the defendant's wife, but also the factual question whether the wife consented or whether she acquiesced to police authority or was coerced into consenting.

legal periodicals.[2]  The decisions represent a variety of opinions on what rules of law should be applied to the differing factual situations involved in each case.  No useful purpose would be served in trying to cite or discuss any substantial number of the decisions.

We believe both on reason and on precedent that the correct answer to the question before us is that the search to which the defendant's wife consented is valid against the defendant.  In a recent case of *Commonwealth* v. *Connolly*, 356 Mass. 617, 624, we held, quoting from *Drummond* v. *United States*, 350 F. 2d 983, 989 (8th Cir.), that "One having equal authority over premises may authorize a search of them."  Although the parties "having equal authority over [the] premises" in the *Connolly* and the *Drummond* cases were not husband and wife, we see no reason why the same rule should not apply to a husband and wife having equal authority over the premises which they share as their household.  Smith, Criminal Practice and Procedure, §§ 197–198.  In such a case the wife's action is not dependent on the finding of any express or implied authority from the husband to consent to the search, but is based upon her own right, at least equal to that of the husband, to the use, enjoyment and control of their household premises.  This was convincingly stated in *Roberts* v. *United States*, 332 F. 2d 892, 896–897 (8th Cir.), cert. den. 380 U. S. 980, as follows: "It is not a question of agency, for a wife should not be held to have authority to waive her husband's constitutional rights.  This is a question of the wife's own rights to authorize entry into premises where she lives and of which she had control."  *Stein* v. *United States*, 166 F. 2d 851, 855 (9th Cir.).  *United States* v. *Alloway*, 397 F. 2d 105 (6th Cir.).  *United States* v. *Thompson*, 421 F. 2d 373, 376

[2] See Belefonte, The Effect of a Wife's Consent to a Search and Seizure of the Husband's Property, 69 Dickinson L. Rev. 69;  Recent Cases, *State* v. *Coolidge*, 79 Harv. L. Rev. 1513;  Mascoler, Inter-spousal Consent to Unreasonable Searches and Seizures: A Constitutional Approach, 40 Conn. Bar J. 351;  Third Party Consent, 1967 Wash. Univ. L. Q. 12, 25–27.  See also Annotation, Authority to consent for another to search or seizure, 31 A. L. R. 2d 1078;  47 Am. Jur., Searches and Seizures, § 72.

(5th Cir.). *People* v. *Carter*, 48 Cal. 2d 737. *People* v. *Dominguez*, 144 Cal. App. 2d 63. *People* v. *Shambley*, 4 Ill. 2d 38. *People* v. *Harvey*, 48 Ill. App. 2d 261. *Greer* v. *State*, 253 Ind. 609. *State* v. *Shephard*, 255 Iowa 1218. *Bellam* v. *State*, 233 Md. 368.[3]

The defendant argues further that in any event the wife's consent to a police search of the marital household premises should not make the search valid against the husband where, as in this case, there is obvious antagonism by the wife toward her husband. He bases this argument on language in the case of *In re Lessard*, 62 Cal. 2d 497, 504, to the effect that "When the usual amicable relations exist between husband and wife . . . and the property seized is of a kind over which the wife normally exercises as much control as the husband, it is reasonable to conclude that she is in a position to consent to a search and seizure of property in their home." Whatever bearing the existence or non-existence of "amicable relations" may have under a theory of a wife's implied authority to consent to a search, it does not apply to a rule recognizing the wife's right to consent to the search of the marital household premises over which she has equal authority with her husband. While they are both living in the premises the equal authority does not lapse and revive with the lapse and revival of amicable relations between the spouses. The existence of antagonism by one spouse against the other may reveal motives for consenting to a search, and it may bear on the weight and credibility of any testi-

---

[3] The same rule was applied in the following cases where the person consenting to the search was neither the defendant nor his wife. *Frazier* v. *Cupp*, 394 U. S. 731, consent by joint user of duffle bag. *United States* v. *Sferas*, 210 F. 2d 69 (7th Cir.), consent by a brother-partner. *Teasley* v. *United States*, 292 F. 2d 460, 463 (9th Cir.), consent by a coöccupant of apartment. *Maxwell* v. *Stephens*, 348 F. 2d 325 (8th Cir.), consent by mother. *Drummond* v. *United States*, 350 F. 2d 983, 988 (8th Cir.), consent of joint occupant. *Anderson* v. *United States*, 399 F. 2d 753, 756 (10th Cir.), consent by owner of car who had loaned it to defendant but who again had possession of it several hours after defendant's arrest. *Gurleski* v. *United States*, 405 F. 2d 253, 262 (5th Cir.), consent by codefendant who lived with defendant, had keys to latter's car and unrestricted right to operate it. *People* v. *Terry*, 57 Cal. 2d 538, consent by joint occupant of apartment. *State* v. *Haggard*, 89 Idaho 217, consent by mother. *State* v. *Kinderman*, 271 Minn. 405, consent by father.

mony given by the antagonistic spouse, but it does not change that spouse's position with reference to the right to give such consent.

The only language in the defendant's brief which can be considered as an argument on the alleged error in denying the motion to suppress the evidence seized pursuant to the search warrant is the following paragraph under the heading of "SUMMARY OF ARGUMENT": "2. The Court erred in denying Appellant's Motion to Suppress property seized on February 22, 1969 as a result of a search warrant flowing from the original search permitted by the Appellant's wife." No further mention is made of this point in the balance of the brief devoted to argument. This capsule type of reference to an issue in an advance summary of argument is no substitute for argument, and warrants our treating the issue as waived for failure to argue it. In any event the issue is of no consequence since we have upheld the validity of the prior search on consent of the defendant's wife. *Lolos* v. *Berlin*, 338 Mass. 10, 13–14.

The evidence tending to prove that the defendant was one of the two persons who robbed Brown was in very large part circumstantial. The rules governing the proof of crimes or of the elements thereof by circumstantial evidence and the probative value of that kind of evidence, as stated in *Commonwealth* v. *Webster*, 5 Cush. 295, 310–318, have been restated and applied in so many cases since that it is unnecessary to repeat them. Applying these well settled rules to this case, we hold that the evidence was sufficient to permit the jury to find facts which, with inferences they might properly draw therefrom, would "be of a conclusive nature and tendency, leading on the whole to a satisfactory conclusion, and producing in effect a reasonable and moral certainty, that . . . [the defendant] committed the offence" of which he was found guilty. *Commonwealth* v. *Webster, supra,* 319. *Commonwealth* v. *Russ,* 232 Mass. 58, 68. *Commonwealth* v. *Medeiros,* 354 Mass. 193, 197. If, as contended by the defendant, certain witnesses made contradictory statements or prior inconsistent statements, that

would bear upon the weight and credibility of their testimony, but not upon the sufficiency of the evidence for submission of the case to the jury. Questions of weight and credibility of evidence are to be determined by the jury. and not the trial judge.

*Judgments affirmed.*