**UNITED STATES**

v.

**Staff Sergeant Kathleen M. FISH, FR 561–35–4697, United States Air Force.**

**ACM 26088.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 10 March 1987.

Decided 11 Dec. 1987.

Appellate Counsel for the Appellant: Colonel Leo L. Sergi and Captain Laurence M. Soybel.

Appellate Counsel for the United States: Colonel Joe R. Lamport, Lieutenant Colonel Robert E. Giovagnoni and Major Carole W. Hanson.

Before SESSOMS, MICHALSKI and LEWIS, Appellate Military Judges.

## DECISION

MICHALSKI, Judge:

A military judge convicted the appellant of wrongful use and possession of methamphetamines in accordance with her conditional pleas of guilty. Although the appellant has assigned two errors for our consideration and has submitted an invited issue, we shall only discuss the first of the two assigned errors which asks

> WHETHER THE MILITARY JUDGE ERRED WHEN SHE FAILED TO SUPPRESS THE CONTAINER OF ILLEGAL DRUGS FOUND IN APPELLANT'S HOUSE AFTER HER HUSBAND GRANTED THE OSI CONSENT TO SEARCH APPELLANT'S ON-BASE QUARTERS.

Given the factual context of the case before us we answer the above issue in the negative and affirm.

The appellant's marriage experienced episodes of separations and reconciliations with her civilian dependent husband. About two weeks after her wedding in 1980 she told her husband that she wanted a divorce. This subject was discussed repeatedly throughout the course of their stormy marriage. The appellant would occasionally tell her husband to leave and he would comply by staying away for various periods of time, sometimes days, weeks or months. Eventually they would get back together again. During some of these prior reunifications she would not give him the house key, but he would otherwise have complete access to the house. In October 1985 she filed for divorce. The decree was to become final in April 1986. During the latter part of February 1986 and for two or more days per week in March of the same year and on the 27th and 28th days of that same month he was again living with appellant as man and wife in her quarters without any restrictions concerning the use of her home. The only known qualification to this arrangement was that he did not have a key to the house and that he was not to drink while he was staying there. On the morning of 28 March 1986 her husband telephoned the Air

Force Office of Special Investigations (OSI) from his wife's quarters and said that he saw his wife use some type of drug earlier that morning and that the drug was on the premises. He invited the OSI to the house to investigate. Later that day two OSI agents accepted the invitation. They asked the husband for identification and were shown his military dependent's ID card. They then advised him of his rights under the Fifth Amendment to the Constitution, he acknowledged his rights and declined counsel. He signed an Air Force Form 1364, Consent for Search and Seizure in which he authorized a search of the residence. He told the agents that he had witnessed his wife inhale a brownish powder and that this substance could be found in a plastic container located in a hall closet. He then led them to the closet where the container was located. A field test of the powder found in this container indicated a positive result for the presence of methamphetamine.

Mil.R.Evid. 314, "Searches not Requiring Probable Cause," provides that, "Evidence obtained from reasonable searches not requiring probable cause conducted pursuant to this rule is admissible at trial when relevant and not otherwise inadmissible under these rules." Mil.R.Evid. 314(e), "Consent Searches", states in part that searches may be conducted of any property with lawful consent and that, "A person may grant consent to search property when the person exercises control over the property." M.C.M., app. 22, Rule 314(e)(2) (1984) advises that the question of whether an individual may grant consent to a search of property not his own is a matter to be determined on a case by case basis.

The precise question that must be asked is whether the person who consented to the search has sufficient control over the premises. See S. Saltzburg, L. Schinasi & D. Schlueter, *Military Rules of Evidence Manual* 254 (2nd ed. 1986), which provides that, "where property to be searched is controlled by a third party, that party may grant the requisite consent."

Except for the two exceptions we noted above, the record establishes that the ap-

pellant's spouse had unrestricted access to his wife's quarters. The case *sub judice* is devoid of any evidence that would have reasonably led the OSI to suspect appellant's husband was not a lawful occupant of the premises with sufficient authority and control to allow them entry for the specific purpose of searching a hall closet. This was a lawful consent search. *United States v. Matlock*, 415 U.S. 164, 171, n. 7, 94 S.Ct. 988, 993, n. 7, 39 L.Ed.2d 242 states that co-inhabitants have the right to permit an inspection in their own right and that others assume the risk that one of their number might permit the common area to be searched; *Frazier v. Cupp*, 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969); *United States v. Harrison*, 679 F.2d 942 (D.C.Cir.1982); *United States v. Thompson*, 421 F.2d 373 (5th Cir.1970); *People v. Howard*, 166 Cal.App.2d 638, 334 P.2d 105 (1958); *United States v. Curry*, 15 M.J. 701 (A.C.M.R.1983), *reversed in part on other grounds/affirmed in part*, 18 M.J. 103 (C.M.A.1984).

■ However, it is not necessary that we focus unduly on whether the husband's consent was premised on his status as a cohabitant or as a mere guest. Regardless of how one views his relationship to the premises, it is undisputed that he was present in the quarters with the appellant's acquiescence and that she had not imposed restrictions on his access to any portion of the quarters. Most importantly, she unwisely committed a criminal act in the presence of an individual whom she should have suspected might well have a variety of motives to report it to authorities. She compounded this problem of her own making by leaving incriminating physical evidence on the premises where it could be readily seized if her spouse should report her activity. In so doing she forfeited a rational claim to a reasonable expectation of privacy over the area from which the contraband was subsequently seized. She clearly "assumed the risk" that her estranged mate would allow others access to the methamphetamine powder. *Frazier v. Cupp, supra*, 394 U.S. at 740, 89 S.Ct. at 1425.

We have examined the record of trial, the assignment of errors, and the government's reply thereto and have concluded that the findings and sentence are correct in law and fact and that no error prejudicial to the substantial rights of the appellant was committed. Accordingly, the findings of guilty and the sentence are

AFFIRMED.

LEWIS, Judge (concurring):

While I concur with the military judge's denial of the motion to suppress, I cannot accept a finding (or conclusion, as the case may be) which may have been an integral key to the resulting ruling. In describing the relationship of the appellant's spouse, Mr. Twofoot, and the appellant during the hours immediately prior to the search on 28 March the military judge stated, "At least for that short period, the accused and her husband were living as husband and wife." It is difficult to determine exactly what the military judge intended to convey in this respect. If she was speaking of any sort of a renewed mutual commitment by each to share domestic tranquility with the other, such a conclusion is entirely inconsistent with the evidence of record. If she intended to convey the thought that the two were again sharing a marital bed, the record is simply not clear in this regard. A more logical inference is that by the latter part of March they were not doing so. The real issue that must be addressed, and was otherwise adequately covered by the military judge, is whether Mr. Twofoot "possessed common authority over or other sufficient relationship to the premises" to consent to a search. *United States v. Matlock*, 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1974). I am satisfied that he did.

It is beyond dispute that Mr. Twofoot and the appellant, who then bore his surname, were husband and wife in fact on the date of the search, whether they were living in the commonly accepted fashion of husband or wife or not. Admittedly, a patently vindictive spouse's invitation to search for evidence of a mate's wrongdoing might not, and possibly ought not, be honored in a court of law. As the Court noted in *Kelley v. State*, 184 Tenn. 143, 197 S.W.2d 545, 546 (1946):

We are of the opinion that in such circumstances the wife had no right to waive her husband's protection against unreasonable searches and seizures, any more than any other person would have had. Her whole attitude was contrary to his interests, and it could not be said that she was acting in any sense in the family interest with any authority to waive rights which might otherwise properly arise out of the relationship.

However, this does not mean that a court cannot recognize a search consented to by an estranged spouse, even one who has voluntarily abandoned the marital abode when the relationship with the other spouse has become untenable. *United States v. Crouthers*, 669 F.2d 635 (10th Cir.1982); *State v. Madrid*, 91 N.M. 375, 574 P.2d 594 (N.M.App.1978), *cert. denied*, 91 N.M. 491, 576 P.2d 297 (1978).

Mr. Twofoot, at trial, professed his concern for his wife's welfare as the motivating factor which prompted his 28 March call to authorities. While one might have good reason to suspect his sincerity in this regard, this is not germane to the resolution of the issue before us. The questions to be considered are whether the agents who responded to the appellant's quarters acted reasonably in relying upon his claim of authority over the premises and, secondly, whether he actually exercised the degree of control over the premises that his claim of authority implied. *United States v. Harris*, 534 F.2d 95, 96–97 (7th Cir.1976); *Nix v. State*, 621 P.2d 1347, 1349–1350 (Alaska 1981). It must be noted that the Supreme Court rejected an apparent authority argument in *Stoner v. California*, 376 U.S. 483, 488–489, 84 S.Ct. 889, 892–893, 11 L.Ed.2d 856 (1964), while holding that a hotel clerk does not possess authority, apparent or otherwise, to allow police to conduct a search of a guest's room. Clearly, however, a spouse actually present in his mate's quarters has a semblance of control over the premises quite distinct from that of a hotel clerk with respect to

the occupied rooms in a commercial establishment.

I conclude from the record that it was reasonable for the agents to proceed with the information at hand on the assumption that they were acting in accordance with the consent of a dependent spouse who exercised control over the premises. There is no evidence that the appellant had barred her husband from any private areas of the residence. *United States v. Curry*, 15 M.J. 701 (A.C.M.R.1983), *rev'd in part, but aff'd in pertinent part*, 18 M.J. 103 (1984) (summary disposition). Whether Mr. Twofoot was a husband in the normally accepted sense of the word or not, he was more than a "casual visitor" and had, for all practical purposes, been granted "the run of the house," however temporarily. *United States v. Turbyfill*, 525 F.2d 57, 58–59 (8th Cir.1975). Thus, he possessed both apparent and actual authority to authorize the search of 28 March. *United States v. Harris, supra.* The military judge did not err in declining to suppress the fruits of the search.

SESSOMS, Senior Judge (dissenting):

I disagree with my brothers. Not only was Mr. Twofoot without capacity to consent to the search of the appellant's home, the law enforcement personnel who conducted the search either knew or should have known that he was a hostile third party and that any consent to search originating with him was suspect. It could be argued that the agents were not lawyers and therefore were not expected to be familiar with every facet of the law of search and seizure. However, since they did consult base legal authorities before conducting the search one can only assume that they had been fully apprised of the applicable law. Thus any assertion that the agents were acting reasonably in relying upon his claim of authority over the premises is without merit.

The prosecution's chief witness was the aforesaid Mr. Joseph Twofoot, a civilian whom the appellant had married while she was assigned to an installation in Maine, but from whom she was divorced at the time of the trial. To say that he was not a stellar witness is to engage in gross understatement. The fact that the trial was held almost a full year after the date of the offenses might provide some explanation for the blurring in his memory of many of the facts of lesser importance. However, he found himself unable to recall many of the things which a reasonable person so involved would ordinarily be expected to remember with little difficulty.

At trial the government did not contest the appellant's claim to a reasonable expectation of privacy in her own home, the fact that she lived in government quarters on a military installation notwithstanding. Instead they proceeded on the theory that even though she did have this reasonable expectation of privacy, Mr. Twofoot had capacity to consent to a search of the premises. During argument on the motion to suppress they advanced the notion that in addition to Mr. Twofoot's capacity to consent to a search of her home, the appellant had "waived" any expectation of privacy she might have had by leaving Mr. Twofoot in her quarters when she departed for work. In order to understand the relationship between Mr. Twofoot and the appellant at the time of the search one must be familiar with a number of facts which I do not believe to be sufficiently detailed in the affirming opinions.

According to Mr. Twofoot, the appellant realized within a very short time after the wedding that his lack of sobriety was already jeopardizing their marriage. As reported in the lead opinion, their stormy relationship was marked by repeated separations and reunions. Whenever they would have one of their frequent arguments about his over indulgence, she would take his keys, throw him out of the house, and he would find himself on a bus headed back to the eastern part of the country. Sooner or later he would reappear in California. In 1983 the base commander barred Mr. Twofoot from the installation for having physically assaulted the appellant. During this debarment appellant would occasionally allow him to enter her home via the back door, which she would leave unlocked for his convenience. His

forays onto the base were not always without incident. On at least one occasion he was apprehended for trespass and required to pay a fine in the federal courts. For reasons not apparent in the record (other than the birth of a child in 1982), appellant continued to participate in this turbulent relationship for several years. In the early part of 1985 she agreed to seek a lifting of the debarment of Mr. Twofoot on the condition that he attend an alcoholic rehabilitation program. After his completion of this program she again allowed him to move into her home for two or three months. However, by the end of October she had again booted him out. This time she added a touch of finality to their union by initiating divorce proceedings. In an attempt to further remove herself from his presence and his influence, she sought and obtained an overseas assignment. Her first sergeant warned her, however, that she would not be allowed to take the new assignment unless she could meet Air Force weight standards at least one month prior to her scheduled departure.[1]

Mr. Twofoot was unable to remember with any degree of certainty when in the autumn of 1985 he actually departed California. He could only remember that it was after the commencement of the divorce proceedings. In response to questions of counsel, he variously stated that he had left in October, in December, and at one point he stated that he believed that he was gone for as much as a year. He was equally uncertain about the time of his return. He wasn't sure whether it was January, February, or March. However, the record does clearly establish that by March of 1986 he was back, ostensibly to visit his child. Though the divorce was not yet final,[2] he was again, as he had in the past, occupying a room in the base visitors' quarters.[3]

On March 27, 1986 Mr. Twofoot visited his child in the appellant's home. Even though he still had his room at billeting, he was allowed to remain in her quarters overnight. The record does not tell us where in the house he slept. We don't know whether he slept on a couch in the living room, as he did on some occasions, in an extra bedroom, or with his wife in her bedroom. We can only assume that had the latter occurred the government would have made much of that occurrence. The record is clear, however, that Mr. Twofoot's access to and use of her home was controlled by the appellant. He owned no property on the premises, not even a change of clothes. He was not allowed to have keys, he could not drink any alcoholic beverages, and he could have no visitors without her permission. Though he was permitted to enter any part of the house, he exercised no control or dominion over any property located therein. His status was that of a casual visitor.

In addressing the validity of searches conducted pursuant to the consent of a third party the courts have generally held that each case must be decided on its own facts. The Illinois courts have held that where there is a familial relationship it may be inferred that the consenting party has an equal right to the use and possession of the premises from the existence of the relationship. *People v. Rodriquez,* 79 Ill.App. 2d 26, 223 N.E.2d 414 (1967). However, in no case that we have found has there been a holding that any such inference is not rebuttable. In *Commonwealth v. Martin,* 358 Mass. 282, 264 N.E.2d 366 (1970) the Supreme Judicial Court of Massachusetts manifestly refused to hold that the authority to consent to search could be implied from the sole fact of the marital relationship between the parties. Although it was dicta, the Massachusetts court opined that the capacity to consent to search rests upon the parties having equal authority

---

**1.** She was later to claim that her use of methamphetamine was part of her effort to comply with this requirement.

**2.** Documents in the record indicate that the divorce was to become final on April 26, 1985 [sic]. This was obviously a clerical error.

**3.** The record is not clear as to when Mr. Twofoot first checked into billeting, or how many nights he was allowed to remain there.

over the premises occupied by them. *Martin, supra* 264 N.E.2d at 368, 369.

The majority seem to rely heavily upon the holding in *United States v. Matlock,* 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974) for their opinions in the case at bar. I think their position is not well founded. In *Matlock* the defendant's female cohabitant had consented to a search of their room. They had been living together for some time. They had been sharing the same bed, the same dresser, they had otherwise conducted themselves as husband and wife, and on at least one occasion she had told others that they were, in fact, husband and wife. The opinion deals principally with the exclusion of statements which tended to establish the consenting party's relationship to the room. However, the Court set forth a definitive rule outlining the conditions under which a third party could validly consent to the search of the residence of another. In so doing the Court concluded that a third party may consent to the search of premises when the said third party possesses common authority or other relationship over the premises or effects, and that the authority is valid as against the absent, non-consenting person with whom that authority is shared. The Court explained that the common authority required was not derived from a property interest in the room or article to be searched, but rather from the mutual use of the property by one having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection *in his own right,* and that the others have assumed the risk that one of their number might permit the search. *Matlock,* 415 U.S. 164, 171, n. 7, 94 S.Ct. 988, 993, n. 7, 39 L.Ed.2d 242 (1974). (Emphasis added.)

Mr. Twofoot's control and dominion over the appellant's home simply did not meet the requirements of *Matlock* and he was therefore without capacity to consent to a search of the premises. The probable cause searches that were based upon information acquired during this "unreasonable search" were also invalid. Therefore the findings and sentence should be set aside and the charges dismissed.